ORDERED.

**Dated: May 21, 2020**

_____

Lori V. Vaughan
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                              CASE NO.    6:20-bk-02684-LVV

**DM World Transportation, LLC**               CHAPTER 11

Debtor.
_____/

**FIRST INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO SELL ACCOUNTS RECEIVABLE UNDER A FACTOR PROGRAM WITH RTS FINANCIAL SERVICE, INC. PURSUANT TO 11 U.S.C. §§ 363(b) AND (f); (II) GRANTING SECURITY INTERESTS PURSUANT TO 11 U.S.C. §§ 364(c), 364(d)(1), 364(e), AND 507; (III) AUTHORIZING USE OF CASH COLLATERAL; AND (IV) NOTICE OF CONTINUED HEARING ON JUNE 4, 2020**

This case came before the court at a hearing on May 14, 2020 to consider and act upon the emergency motion (the "Motion") (Doc. No. 8) of DM World Transportation, LLC ("Debtor") in the above-referenced Chapter 11 case for an interim order (i) authorizing the Debtor to sell accounts receivable under a factor program with RTS Financial Service, Inc. ("RTS" or the "DIP Factor") seeking, inter alia, entry of an Interim Order (this "Interim Order") and a Final Order (the "Final Order") authorizing the Debtor to:

   i.      sell accounts receivable (the "Accounts") under a post-petition accounts receivable factor program with the DIP Factor (the "DIP Factor Facility"), with the purchase of accounts receivable being subject to DIP Factor's sole and absolute discretion, and conditioned upon DIP

1

Factor's review, approval and acceptance of such Accounts pursuant to sections 363 and 364 of the Bankruptcy Code by entering into a DIP Factoring Agreement (the "DIP Agreement") that outlines the terms for a secured superpriority debtor-in-possession factor facility, which DIP Factor Facility shall provide necessary liquidity and working capital for the Debtor's operations, as is memorialized in the DIP Agreement and related documents and instruments, as may be amended, supplemented or otherwise modified from time to time, the "DIP Factor Agreement" and, collectively with the DIP Term Sheet, the "DIP Factor Documents" and collectively with the Loan Documents (as defined herein), the ("Documents");

ii.      grant super-priority claims to and on behalf of and for the benefit of the DIP Factor in accordance with the DIP Factor Documents, the Interim Order and the Final Order to secure any and all of the Debtor's obligations, indebtedness and liabilities under the DIP Factor Documents, including all fees and costs of professionals retained by the DIP Factor (the "DIP Obligations"),

iii.      in accordance with Section 364(d)(1) of the Bankruptcy Code, grant the DIP Factor a valid and automatically perfected first priority, senior lien on and security interest in all of the DIP Collateral (as defined herein) but such lien being junior to each Prior Lien (as that term is defined below)

iv.      pending a final hearing on the Motion (the "Final Hearing"), enter into post-petition financing under the DIP Term Sheet until and including the date on which the Final Order is entered,

v.      in accordance with Rule 4001(c)(2) of the Bankruptcy Rules, requesting that this Court schedule the Final Hearing and approve notice with respect thereto.

The Court having considered the Motion and the exhibits attached thereto, including, without limitation, the DIP Agreement, the evidenced submitted or adduced and the arguments of

counsel made at the interim hearing held and concluded on May 14, 2020 (the "Interim Hearing"); and due and sufficient notice of the Motion and the Final Hearing having been given in accordance with the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"); and upon all of the pleadings filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTOR, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition Date. On May 12, 2020 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the Unites States Bankruptcy Court for the Middle District of Florida, Orlando Division commencing this Case (the "Court").

B.      Debtor in Possession. The Debtor is continuing in the management and operation of its businesses and properties as Debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

C.      Jurisdiction and Venue. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Statutory Committee. The United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.    Findings Regarding the Post-petition Financing.

(i)    *Need for Post-petition Financing*. The Debtor's need to obtain credit pursuant to the DIP Factor Facility is immediate and critical in order to enable the Debtor to continue operations, to minimize the disruption of the Debtor as a "going concern" and to administer and to preserve the value of its estate. The ability of the Debtor to finance its operations, maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise finance its operations requires the availability of capital from the DIP Factor Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, and the possibility for a successful reorganization. The Debtor does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Factor Facility.

(ii)    *No Credit Available on More Favorable Terms.* Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Factor on terms more favorable than the DIP Factor Facility. The Debtor is unable to obtain sufficient committed unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor is also unable to obtain sufficient committed secured credit allowable under Bankruptcy Code section 364(c) of the Bankruptcy Code. The Debtor represents that it is unable to obtain post-petition financing unless the Debtor grants the DIP Factor the (a) valid and perfected first priority, senior liens on and security interests in the DIP Collateral (defined below) in accordance with Section 364(d)(1) of the Bankruptcy Code, but such liens being junior to each Prior Lien, (b) a super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code, and (c) the other protections set forth in this Interim Order.

(iii)    *Use of Proceeds of the DIP Factor Facility.* The DIP Factor, in its sole and absolute discretion, has agreed to purchase the Accounts and provide financial accommodations to fund the Debtor's required operations during the administration of the Debtor's Case. As a condition to the entry into the DIP Factor Facility, the DIP Factor has required, and the Debtor has agreed, that proceeds of the DIP Factor Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Factor Documents, this Interim Order and the Budget (defined below and as the same may be modified from time to time with the express written consent of the DIP Factor, solely for (1) working capital and other general corporate purposes, (2) permitted payment of costs of administration of the Case, (3) payment of fees and expenses due under the DIP Facility, and as approved by the Court.

(iv)    *Sections 506(c) and 552(b)*. Upon entry of the Final Order, DIP Factor is entitled to and shall receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

F.    <u>Good Faith of the DIP Factor</u>.

(i)    *Willingness to Provide Financing*. The DIP Factor has indicated a willingness to provide financing to the Debtor subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Factor Facility and the DIP Factor Documents; and (c) entry of findings by this Court that such financing is essential to the Debtor's estate, that the DIP Factor is extending financial accommodations to the Debtor pursuant to the DIP Factor Documents in good faith, and that the DIP Factor's claims, super-priority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Factor Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms and conditions of the DIP Factor Facility and the DIP Factor Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtor under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Factor Facility was negotiated in good faith and at arm's length among the Debtor and DIP Factor. Funding to be extended under the DIP Factor Facility shall be deemed to have been so allowed, sold, advanced, made, used or extended in good faith, and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the DIP Factor is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

G.    <u>Adequate Protection</u>. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain the consent or non-objection of parties.

H.    <u>Necessity of Immediate Relief.</u> The interim relief sought in the Motion is necessary and in the best interests of the Debtor's estate in order to prevent immediate and irreparable harm

to the Debtor's estate that would otherwise result if the Debtor were prevented from accessing the DIP Factor Facility on an interim basis in order to maintain its operations and, preserve and maximize the value of the assets of its estate.

I.    Final Hearing. At the Final Hearing, the Debtor will seek final approval of the proposed postpetition financing arrangements pursuant to a proposed Final Order, which shall be in form and substance acceptable to the DIP Factor, approving such postpetition financing arrangements, notice of which Final Hearing and Final Order will be provided in accordance with this Interim Order.

J.    Notice. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the U.S. Trustee; (ii) the Internal Revenue Service; (iii) Debtor's twenty (20) largest unsecured creditors; (iv) counsel to the DIP Factor; (v) counsel to prepetition secured creditors; (vi) counsel to the Prepetition Equipment Lenders; (vii) all parties who have filed a notice of appearance and requested service of pleadings in the Case; (viii) applicable state and local taxing authorities; and (ix) all other parties entitled to receive notice pursuant to Bankruptcy Rule 4001(c) and (d). The parties have made reasonable efforts to afford the best notice possible under the circumstances and the notice provided complies with the Bankruptcy Rules and Local Rules.

K.    Modifications.  At the Hearing, counsel to the Debtor announced *ore tenus* modifications to the loan terms and Budget as follows:  (a) the lien granted to DIP Factor will not prime, and shall be subordinated to, the properly perfected liens of any prepetition lender (including, *inter alia*, IBERIABANK, CenterState Bank, N.A., BMO Harris Bank N.A., TCF National Bank, Bank of America, N.A. and Banc of America Leasing & Capital, LLC, and

Signature Financial LLC) in equipment, rolling stock, machinery, tractors, trailers, furniture, fixtures, and equipment, chattel paper relating to any of the foregoing and the proceeds of any of the foregoing (including any sale or insurance proceeds) (each a "Prior Lien"); (b) the super priority administrative claim of DIP Factor will not apply to any advisory fees; (c) pending assumption of executory contracts, Debtor may pay agreed prepetition cure amounts to Comdata and Pilot Travel Centers LLC; and (d) the Budget is amended during the interim period, to remove the line items for professional fees, rent, and county taxes and no amounts will be expended for such (collectively, (a)-(d) referred to as the "Modifications").

NOW, THEREFORE, IT IS HEREBY ORDERED, effective immediately, that:

1.      The Motion is **GRANTED** in its entirety and the Modifications are approved. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Interim Order shall become effective as of the conclusion of the May 14, 2020 hearing on the Motion.

2.      Until the earlier of (a) the maturity of the DIP Agreement or (b) the Termination Date (defined below), and subject to the terms, conditions and limitations on availability in the DIP Factor Documents, the DIP Factor Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtor's estate, the Debtor is hereby authorized (i) to enter into the DIP Agreement, substantially in the form filed with the Court, with the  Modifications as permitted by this Interim Order, and the other DIP Factor Documents and (ii) sell Accounts to the DIP Factor pursuant to the terms of the DIP Agreement and—after deduction by DIP Factor of amounts allowed under the DIP Factor Documents, including, but not limited to, the applicable discount fee, and such reserves that DIP Factor may elect to retain, use the corresponding advances thereof in its operations. Notwithstanding the grant of security interests in favor of the DIP Factor

as provided in this Interim Order and in the DIP Factor Documents, the DIP Factor shall be the absolute owner of any Accounts purchased in accordance with this Interim Order or the DIP Factor Documents, free of any claims and interests. As provided in the DIP Agreement, the DIP Factor Documents may be amended, modified, supplemented or the provisions thereof waived in accordance with their terms, without further order of this Court; provided, however, that (1) notice of any (i) increase in the aggregate of amount of the facility thereunder, (ii) increase in the discount fees or applicable interest rates charged, other than increases described in the Motion or in the DIP Factor Documents as filed with this Court, or (iii) the addition of financial covenants or financial events of default that are on terms materially more onerous or burdensome to the Debtor, other than modifications described in the Motion or in the DIP Factor Documents as filed with this Court, shall be provided to the United States Trustee and counsel to the Statutory Committee, if any, and such parties shall have five (5) days from the date of such notice within which to object in writing to such amendment, modification or supplement, and upon any such timely written objection, such amendment, modification or supplement shall only be permitted upon the written consent of the objecting party or following entry of an order of this Court approving or authorizing such amendment, modification or supplement and (2) such amendment, modification, supplement or waiver shall not adversely affect any Prior Lien. The Debtor and DIP Factor, through their respective counsel, shall jointly provide a copy of the proposed postpetition DIP Factor Agreement to the Statutory Committee's counsel, if any, and the United States Trustee as soon as practicable prior to the Final Hearing once the DIP Factor, and the Debtor have reached agreement concerning the terms and provisions of same.

3.      Provided no Event of Default has occurred, the DIP Factor facility shall continue until the earlier of (i) one year upon the entry of this Interim Order or (ii) the effective date of a

plan of reorganization. Notwithstanding the foregoing and the absence of any Event of Default being declared and only to the extent provided under the DIP Factor Agreement and according to the customary ordinary course of business practice of the DIP Factor and the Debtor, the DIP Factor may decide, in its sole discretion, to accept or reject any Account offered for sale and to decline to advance the purchase price for such Account.

4.     Effective upon entry of this Interim Order, other than statutory fees owing to the U.S. Trustee and, subject to the DIP Factor's consent, professional fees owing to the Debtor's counsel, the DIP Factor on account of the DIP Obligations is hereby granted a superpriority administrative expense claim (the "Superpriority Claim") that shall have priority under sections 364(c)(l) and 503(b) of the Bankruptcy Code over any and all administrative expense claims, priority claims, and unsecured claims against the Debtor and the Debtor's estate, now existing or hereafter arising, of any kind or name whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, and 1114 of the Bankruptcy Code.

5.     To secure the amounts advanced under the DIP Agreement, effective as of the conclusion of the May 14, 2020 hearing on the Motion, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Factor is hereby granted valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority, senior security interests in and liens on (the "DIP Liens") the following assets of the Debtor, now owned or hereafter acquired (collectively, the "DIP Collateral"):

(i)     all prepetition and postpetition Accounts, accounts receivable, and general intangibles whether now existing or hereafter acquired or arising, all interest of replevin held by

the Debtor arising in goods, the sale of which gave rise to any Account; (ii) all documents, chattel paper, instruments and general intangibles relating to the foregoing; (iii) all books and records pertaining to all of the foregoing, including but not limited to computer programs, data and lists; and (vi) any proceeds of the foregoing. The Court finds that all entities which may claim an interest in or lien on the DIP Collateral, which are now subordinated to the DIP Liens, are adequately protected. Notwithstanding the foregoing and for the avoidance of doubt, the DIP Liens are junior to each Prior Lien.

6.      The DIP Liens shall not be (i) subject to any lien that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code, or (ii) except as provided herein with respect to each Prior Lien, subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. Except for each Prior Lien, no claim or lien having a priority superior to or *pari passu* with the DIP Liens or the Superpriority Claim granted by this Interim Order with respect to the DIP Obligations, shall be granted or allowed.

7.      Any and all fees paid or required to be paid in connection with the DIP Factor Documents (including, but not limited to, the fees and expenses of the DIP Factor, service fees and due diligence fee) are hereby authorized and shall be paid as set forth in the DIP Agreement or contained in the DIP Factor Documents filed with the Court.

8.      The DIP Factor shall have no obligation to purchase Accounts or make any loan or advance under the DIP Factor Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Factor Documents and this Interim Order have been satisfied in full or waived by the DIP Factor in its sole discretion.

9.      From and after the Petition Date, the Debtor shall use funds and advances of credit under the DIP Factor Facility only for the purposes specifically set forth in this Interim Order, the DIP Factor Documents and in compliance with the Budget, a copy of which is attached to this Interim Order as Exhibit 1. Notwithstanding any first-day orders entered authorizing the Debtor to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget.

10.     Attached hereto as <u>Exhibit 1</u> is a five (5) week Budget (the "Budget") for the period through June 12, 2020, which has been preliminarily consented to by the DIP Factor. The Budget reflects, on a line-item basis, anticipated cash receipts and expenditures on a weekly basis and includes all necessary and required expenses that the Debtor expects to incur during each month of the Budget. The Debtor shall be authorized to use the proceeds of the DIP Factor Facility only for payment of such items as are set forth in the Budget and subject to the terms and conditions set forth in the DIP Factor Documents, this Interim Order and the Final Order. The Budget shall be revised by the end of each month during the period of this Order, and which shall remain subject to the consent of the DIP Factor each month.  Any disbursement by the Debtor other than for budgeted amounts as set forth in the Budget shall constitute an Event of Default in accordance with the provisions of this Order unless the DIP Factor consents to those changes in writing; provided, however, that the Debtor may make payments in excess of the total budgeted disbursements so long as the Variance Percent of the aggregate of all actual disbursements for each week shall not exceed ten percent (10.0%) of the budgeted disbursements for that week. For the avoidance of doubt, any amount included in the Budget that is not incurred or paid during a particular week shall be permitted to be carried over into subsequent weeks of the Budget.

11.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtor and its estate to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens, and  Superpriority Claim; (b) permit the Debtor to incur all liabilities and obligations under the DIP Factor Documents, the DIP Factor Facility and this Interim Order; (c) permit the Debtor to perform such other acts as are necessary to effectuate the terms of this Interim Order; and (d) authorize the Debtor to pay the DIP Factor; (e) to enable the DIP Factor to file any financing statements, deeds of trust, mortgages or other instruments and documents, if any, evidencing its security interests in and liens on the DIP Collateral; and (f) to enable the DIP Factor to directly collect and apply the Debtor's Accounts without entry of further Order of the Court.

12.     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Factor to the priorities granted herein. Notwithstanding the foregoing, the DIP Factor is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtor is authorized and directed to execute and deliver promptly upon

demand to the DIP Factor, all such financing statements, mortgages, notices and other documents as any of the DIP Factor may reasonably request. The DIP Factor, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.  Debtor further acknowledges and agrees that all accounts purchased by DIP Factor prior to the Petition Date, DIP Factor's ownership interests therein, and Debtor's obligations to DIP Factor thereunder, are valid, binding and enforceable, without setoff, deduction, claim, counterclaim or defense of any kind, and that DIP Factor has valid, enforceable and perfected ownership interests in all pre-petition accounts purchased.

13.     If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this bankruptcy case or any successor bankruptcy case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Factor Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Factor's obligation to purchase Accounts or extend credit under the DIP Factor Facility, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Factor to be applied as set forth in the DIP Factor Documents.

14.     Until the payment in full in cash of all DIP Obligations, and the termination of the DIP Factor's obligations to purchase Accounts or extend credit under the DIP Factor Facility, the Debtor shall insure the DIP Collateral as required under the DIP Factor Facility.

15.     The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral (with the exception of the DIP Factor's Prepetition Factor Accounts and any collateral subject to a Prior Lien) without the prior written consent of the DIP Factor.

16.     On the Termination Date all DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Factor Facility will terminate.

17.     The occurrence of any of the following events of default (subject to any extensions or waivers as permitted under the DIP Factor Documents), or a default under the terms and conditions of this Interim Order, the DIP Agreement and the DIP Factor Documents shall constitute an event of default under this Interim Order, unless expressly waived in writing by the DIP Factor (collectively, the "Events of Default"):

i.      The failure of Debtor to punctually and properly observe, keep or perform any covenant, agreement or condition of the Documents required to be observed, kept or performed in all material respects; or required under any other agreement or contract that may be executed between Debtor and DIP Factor.

ii.     A representation or warranty made by Debtor in the DIP Factor Documents purporting to represent the financial condition of Debtor is untrue or incorrect in any material respect (without duplication of any materiality qualifier contained therein) as of such date, except to the extent that such representation or warranty expressly relates to an earlier date.

iii.    The failure of Debtor to, within ten (10) business days, deliver to DIP Factor a remittance received by Debtor in payment of a purchased Account.

iv.     The failure of Debtor to pay any DIP Obligations owed by Debtor to DIP Factor any under any of the DIP Factor Documents when due and payable, in each case subject to any applicable grace periods and cure rights.

v.      The failure of Debtor to pay any obligations owed by Debtor to RTS under any orders of this Court when due and payable, in each case subject to any applicable grace periods and cure rights.

vi.     A levy or notice of attachment, execution(s), tax lien(s) or assessment(s) or similar process is issued against the Accounts of Debtor or any other DIP Collateral, but in such case only to the extent such encumbrance primes the DIP Factor's security interest or otherwise adversely affects the rights and remedies of the DIP Factor.

vii.    Debtor's allegation in any pleading or other writing, or the finding or conclusion by the Bankruptcy Court, that any agreement, loan or security document of the DIP Factor is not valid, binding or enforceable.

viii.    Entry of an Order dismissing the Debtor's bankruptcy case or converting it to one under chapter 7 of the Bankruptcy Code.

ix.    Appointment of a chapter 11 trustee or examiner with enlarged powers relating to the operation of the business of the Debtor.

x.    Any default under any cash collateral order.

xi.    The filing (with respect to all plans of reorganization filed by the Debtor) or confirmation (with respect to all plans filed by any person or entity other than the Debtor) of a plan of reorganization which contains a treatment of the postpetition obligations under the DIP Factor Facility in a manner inconsistent with that provided for in the DIP Factor Documents, or, which, at a minimum, does not provide for the indefeasible payment in full of the DIP Obligations under the DIP Factor Documents by a date or time any later than the "effective date" of such plan.

xii.    The entry of an order authorizing the sale of all or substantially all of the assets of the Debtor which does not provide that the proceeds of sale of the DIP Collateral, net of (a) each Prior Lien and (b) the costs approved by the DIP Factor, if any, are paid to the DIP Factor.

xiii.    The failure of the Debtor to obtain a Final Order, in form and substance satisfactory to the DIP Factor, by June 4, 2020, unless otherwise agreed to by DIP Factor.

18.    Immediately upon the occurrence of and during the continuation of an Event of Default, (i) the DIP Factor may declare all DIP Obligations owing under the DIP Factor Documents to be immediately due and payable, (ii) any further commitment of the DIP Factor to purchase Accounts or extend credit may be terminated, restricted, or reduced, in the DIP Factor's sole discretion, (iii) without the need for obtaining further order from the Court for relief from the automatic stay (as set forth herein), the DIP Factor may immediately exercise its rights as a secured party and enforce the DIP Liens pursuant to applicable law, including, but not limited to, the right of DIP Factor to establish contact with and instruct any and all Account debtors to remit payment(s) due or to become due arising from the sale of merchandise or rendering of services directly to DIP Factor, and (iv) the DIP Agreement and any other DIP Factor Documents shall be terminated as to

any future liability or obligation of the DIP Factor, but without affecting any of the DIP Liens or the DIP Obligations <u>after first providing the Debtor, the United States Trustee and the Statutory Committee (if any) five (5) days written notice of the Event(s) of Default ("Termination Date")</u>. On the Termination Date, the DIP Obligations shall be due and payable, without notice or demand. Any automatic stay otherwise applicable to the DIP Factor is hereby modified so that the DIP Factor shall be entitled to immediately exercise all rights and remedies against the DIP Collateral in accordance with the DIP Factor Documents and this Interim Order (but subject to the rights of each holder of a Prior Lien) and shall be permitted to satisfy the DIP Obligations and Superpriority Claims, provided, however, that the DIP Factor shall not be entitled to exercise any remedies with respect to the DIP Collateral until five (5) business days after the Termination Date, during which time the Debtor shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred. Unless the Court orders otherwise, the automatic stay shall automatically be terminated at the end of any hearing to consider whether an Event of Default has occurred, without further notice or order, and the DIP Factor shall be permitted to exercise all remedies set forth herein, in the DIP Factor Documents and as otherwise available at law against the DIP Collateral (but subject to the rights of each holder of a Prior Lien), without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral (but subject to the rights of each holder of a Prior Lien) or any other rights and remedies granted to the DIP Factor with respect thereto pursuant to the DIP Factor Documents or this Interim Order. Notwithstanding anything to the contrary in this Interim Order, the right of the DIP Factor to occupy and/or use any leased premises shall be limited to any rights: (a) existing under applicable nonbankruptcy law; (b)

consented to, in writing, by the applicable landlord(s); and/or (c) granted by the Court on motion and notice, and with an opportunity for the landlords to respond.

19.     Upon entry of the Final Order, the DIP Factor shall have the right to "credit bid" the amount of the DIP Obligations as of the date of such bid during any sale of all or substantially all of the Debtor's assets to the extent it includes the sale of any collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code. If the sale includes collateral subject to a Prior Lien, the credit bid shall be subject to such Prior Lien.

20.     If an order dismissing this case under section 1112 of the Bankruptcy Code or otherwise (including under section 707 of the Bankruptcy Code) is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that (i) the claims and liens granted pursuant to this Interim Order to or for the benefit of the DIP Factor shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations in respect thereof shall have been indefeasibly paid in full in cash and satisfied in the manner provided in the DIP Factor Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) prior to dismissal, the Debtor shall deliver to the DIP Factor and record, at the Debtor's cost, such financing statements, mortgages and other documentation evidencing perfected liens in the DIP Collateral as the DIP Factor shall reasonably request, and (iii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

21.     The Debtor's stipulations above shall be binding upon the Debtor.

22.     Through the date hereof, the DIP Factor has acted in good faith in connection with negotiating the DIP Factor Documents, purchasing Accounts and extending credit under the DIP Factor Documents, and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Factor is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

23.     The Debtor shall indemnify and hold harmless the DIP Factor from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Factor Documents or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Factor Documents and as further described therein and herein (including reasonable attorneys' fees incurred in connection with the DIP Factor Documents, this Interim Order and the Final Order), except to the extent resulting from such indemnified party's fraud, negligence, or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Factor's exercise of discretionary rights granted under the DIP Factor Facility. In all such litigation, or the preparation therefor, the DIP Factor shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly pay the reasonable fees and expenses of such counsel. All fees and expenses of professionals of the DIP Factor to be paid by the Debtor under this Order

or the DIP Factor Documents shall be on prior ten (10) day' notice to the Office of the United States Trustee and Statutory Committee (if any) and subject to objections as to reasonableness of such fees or expenses; provided, however, the reimbursement to the DIP Factor contemplated herein may be made by DIP Factor by deducting such amounts from collections of Accounts or by adding such amounts to the DIP Obligations.

24.     Debtor shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the Documents.

25.     Without limiting the rights of access and information afforded the DIP Factor under the DIP Factor Documents, the Debtor shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Factor reasonable access to the Debtor's premises and its books and records in accordance with the DIP Factor Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtor authorizes its independent certified public accountants, financial advisors, and consultants to cooperate, consult with, and provide to the DIP Factor all such information as may be reasonably requested with respect to the business, results of operations and financial condition.

26.     Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of expressly or implicitly, or otherwise impair any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Factor, all of which are preserved.

27.     The failure of the DIP Factor to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

28.     The Debtor is authorized and directed, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary, to (a) do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the DIP Factor Documents and such additional security agreements, pledge agreements, control agreements, mortgages and financing statements and other documents and instruments as may be necessary or appropriate to better evidence and perfect the DIP Factor Facility subject to the terms of this Interim Order, (b) pay all principal, interest, fees and expenses and other amounts described in the DIP Term Sheet as such become due and without the need for further Court approval, including, without limitation, facility fees, administration fees, and the fees and expenses of the attorneys and consultants engaged or to be engaged by DIP Factor to the extent provided in the DIP Term Sheet. None of such fees and expenses shall be subject to the approval of this Court or the United States Trustee Guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.

29.     The DIP Obligations and the claims and liens granted to or for the benefit of the DIP Factor pursuant to this Interim Order and the other DIP Factor Documents, are not subject to any setoff, reduction or disallowance of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code.

30.     The DIP Factor may, but shall not be required to, file a proof of claim in the Case.

31.     The DIP Facility and DIP Collateral (including Cash Collateral) may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Factor, or their rights and remedies under the Documents or this Interim Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or

any Statutory Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, (iii) for monetary, injunctive or other affirmative relief against DIP Factor, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Factor of any rights and/or remedies under this Interim Order, the Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Factor upon any of the DIP Collateral (b) to make any distribution under a plan of reorganization in the Case (except to the holder of a Prior Lien); (c) except to the holder of a Prior Lien, to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required of DIP Factor; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor without the prior written consents of DIP Factor, (e) to object to, contest, or interfere with in any way the DIP Factor's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (f) to use or seek to use any insurance proceeds constituting DIP Collateral (except for any insurance proceeds subject to a Prior Lien, in which case such usage is subject to the written approval of such holder of a Prior Lien) without the consent of the DIP Factor; (g) to incur debt outside the ordinary course of business without the prior consent of the DIP Factor; (h) to object to or challenge in any way the claims, liens, or interests (including DIP Collateral) held by or on behalf of any DIP Factor; (i) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against DIP Factor; (j) to prosecute an objection to,

21

contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, DIP Liens, or any other rights or interests of DIP Factor; or (k) to prevent (or attempt to prevent), hinder or otherwise delay the exercise by DIP Factor of any rights and remedies granted under this Interim Order.

32.    In making decisions to advance any extensions of credit under the DIP Factor Facility, or in taking any other actions related to this Interim Order or the DIP Factor Documents (including, without limitation, the exercise of its approval rights with respect to any budget), DIP Factor shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtor or to be acting as "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and DIP Factor's relationship with Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

33.    This Interim Order is hereby deemed effective immediately pursuant to Bankruptcy Rule 6004(h).

34.    Except as explicitly provided for herein with respect to each holder of a Prior Lien, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

35.    Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the case or any successor case at any time shall be charged against any of the DIP Factor, its claims or the DIP Collateral pursuant to sections 105 or 506(c) of the

Bankruptcy Code, or otherwise, without the prior written consent of the DIP Factor and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Factor.

36.     The DIP Factor shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds shall be received and applied pursuant to DIP Factor Documents and subject to this Interim Order.

37.     Upon entry of the Final Order, the DIP Factor shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of them with respect to proceeds, product, offspring or profits of any of their respective collateral.

38.     The DIP Obligations shall not be discharged by the entry of an order (a) confirming a chapter 11 plan in this case (and, pursuant to section 114l(d)(4) of the Bankruptcy Code, the Debtor hereby waives such discharge) or (b) converting this case to one under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in this case be confirmed or become effective unless such plan provides that the DIP Obligations shall be indefeasibly paid in full in cash and satisfied in the manner provided in the DIP Factor Documents on or before the effective date of such plan.

39.     As of the conclusion of the May 14, 2020 hearing on the Motion, (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Factor, all other creditors of the Debtor, the Statutory Committee or any other court appointed committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the case, any successor case, or upon dismissal of the case or successor case.

40.     An Event of Default hereunder shall occur if, until and unless the DIP Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Factor Facility have been terminated, the Debtor seeks or consents to, directly or indirectly: (a) without the prior written consent of the DIP Factor, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in the case or any successor case, equal or superior to the Superpriority Claim; and (b) without the prior written consent of the DIP Factor, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, other than any Prior Lien. An Event of Default shall occur if the Debtor seeks any amendment, modification or extension of this Interim Order without the prior written consent of the DIP Factor, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Factor.

41.     In the event of any inconsistency between the terms and conditions of the DIP Factor Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

42.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the case or any successor case; or (d) pursuant to which this Court abstains from hearing of the case or successor case. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Factor, pursuant to this Interim Order and/or the DIP Factor Documents, notwithstanding the entry of any such order, shall continue in

the case, in any successor case, or following dismissal of the case or any successor cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been indefeasibly paid in full. The terms and provisions concerning the indemnification of the DIP Factor shall continue in this case, in any successor cases, following dismissal of this case or any successor case, following termination of the DIP Factor Documents and/or the repayment of the DIP Obligations.

43.     The Final Hearing to consider entry of the Final Order and final approval of the DIP Factor Facility is scheduled for June 4, 2020 at 10:30 a.m., (Eastern Time) before the Honorable Lori V. Vaughan, United States Bankruptcy Judge.  The hearing will be held by conference call and video pursuant to separate notice.

43.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

44.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

###

Attorney, R. Scott Shuker, is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three (3) days of entry of the order.

Future Expenses

|  | | | Exhibit "1" | | | | |
|---|---|---|---|---|---|---|---|
| DM World Transportation LLC | | | | | | | |
| | **8-May-20** | **15-May-20** | **22-May-20** | **29-May-20** | **5-Jun-20** | **12-Jun-20** | **19-Jun-20** | **26-Jun-20** |
| | | | | | | | | |
| **Accounts Receivable** | | | | | | | | |
| **Beginning Balance** | $ 4,190,478.19 | $ 4,403,306.34 | $ 4,619,306.15 | $ 4,826,907.55 | $ 5,058,166.37 | $ 5,289,956.66 | $ 5,507,264.83 | $ 5,711,073.00 |
| Invoices Generated | $ 212,828.15 | $ 215,999.81 | $ 207,601.40 | $ 231,258.82 | $ 231,790.29 | $ 217,308.17 | $ 203,808.17 | $ 215,307.69 |
| Ending Balance | $ 4,403,306.34 | $ 4,619,306.15 | $ 4,826,907.55 | $ 5,058,166.37 | $ 5,289,956.66 | $ 5,507,264.83 | $ 5,711,073.00 | $ 5,926,380.69 |
| | | | | | | | | |
| | | | | | | | | |
| **Cash Activity** | | | | | | | | |
| **Beginning Balance** | $ 7,132.70 | $ 3,595.02 | $ 6,005.78 | $ 8,687.22 | $ 3,595.02 | $ 24,317.48 | $ 718.46 | $ 2,684.11 |
| | $ (3,537.68) | $ 2,410.76 | $ 2,681.44 | $ (5,092.20) | $ 20,722.46 | $ (23,599.02) | $ 1,965.65 | $ 853.57 |
| Total Deposits | $ 3,595.02 | $ 6,005.78 | $ 8,687.22 | $ 3,595.02 | $ 24,317.48 | $ 718.46 | $ 2,684.11 | $ 3,537.68 |

| | **8-May-20** | **15-May-20** | **22-May-20** | **29-May-20** | **5-Jun-20** | **12-Jun-20** | **19-Jun-20** | **26-Jun-20** |
|---|---|---|---|---|---|---|---|---|
| Less Withdrawls: | | | | | | | | |
| Operating | | | | | | | | |
| Bank Service Charges | $ - | $ 3,500.00 | $ - | $ - | $ - | $ 3,500.00 | | $ - |
| County Taxes | $ - | $ 38,637.35 | $ 20,629.15 | $ - | $ - | $ - | $ - | $ - |
| Dues and Subscrptions | $ 846.00 | $ 1,500.00 | $ 75.00 | $ 60.00 | $ - | $ 250.00 | $ 35.00 | $ 50.00 |
| Garbage & Disposal | $ - | $ - | $ - | $ 165.00 | $ - | $ - | $ - | $ 165.00 |
| Driver Payroll (SubContractor) | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 | $ 42,891.27 |
| Insurance Expense | $ 39,878.29 | $ 5,000.00 | $ 5,787.86 | $ 4,455.00 | $ 39,878.29 | $ 5,000.00 | $ 5,787.86 | $ 4,455.00 |
| Interest Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Internet Expense | $ - | $ 521.27 | $ - | $ - | $ - | $ 521.27 | $ - | $ - |
| Late Fees | $ 6,550.00 | $ 6,750.00 | $ 6,870.00 | $ 6,950.00 | $ 7,050.00 | $ 7,150.00 | $ 7,260.00 | $ 7,350.00 |
| Miscellaneous Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Office Supplies | $ 250.00 | $ - | $ 190.00 | $ - | $ 245.00 | $ - | $ 225.00 | $ - |
| Parking and Tolls | $ 2,465.00 | $ 2,350.00 | $ 2,560.00 | $ 2,445.00 | $ 2,660.00 | $ 2,600.00 | $ 2,570.00 | $ 2,605.00 |
| Pest, Lawn, Maintan | $ 58.85 | $ 275.00 | $ 500.00 | $ - | $ 58.85 | $ 275.00 | $ 500.00 | $ - |
| Postage and Delivery Expense | $ 375.00 | $ 345.00 | $ 250.00 | $ 275.00 | $ 305.00 | $ 265.00 | $ 255.00 | $ 246.00 |
| Processing Fee | | | | | | | | |
| Professional Fees | $ 2,500.00 | $ 1,500.00 | | | $ 2,500.00 | $ 1,500.00 | | |
| Payroll Exprenses | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 | $ 17,703.45 |
| Past Due Payroll | $ 38,525.56 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Recruting | $ 1,300.00 | $ 750.00 | $ 1,448.00 | $ - | $ 1,250.00 | $ 740.00 | $ 1,448.00 | $ - |
| Rent Expense | $ 23,098.79 | $ - | $ - | $ - | $ 23,098.79 | $ - | $ - | $ - |
| Other COS/SG&A | $ 30,840.00 | $ 31,500.00 | $ 32,580.00 | $ 33,870.00 | $ 32,000.00 | $ 35,950.00 | $ 34,880.00 | $ 36,540.00 |
| RedRock Truck Rental | $ 15,172.24 | $ - | $ - | $ - | $ 15,172.24 | $ - | $ - | $ - |
| Truck Repair and Maintan | $ 3,750.00 | $ 4,200.00 | $ 3,950.00 | $ 4,100.00 | $ 3,870.00 | $ 4,265.00 | $ 4,050.00 | $ 3,555.00 |
| Software | $ 9,850.00 | | $ 560.00 | $ - | $ 9,850.00 | | $ 560.00 | $ - |
| Highway Taxes | $ 5,600.00 | | | | | | | |
| Telephone/Wireless Expense | $ 5,600.00 | $ 719.52 | $ - | $ - | $ 5,600.00 | $ 719.52 | $ - | $ - |
| Utilities | | $ 270.98 | $ 1,450.00 | $ - | $ - | $ 270.98 | $ 1,550.00 | $ - |
| Violation | $ 125.00 | $ 50.00 | $ 85.00 | $ 95.00 | $ 105.00 | $ 150.00 | $ 250.00 | $ 205.00 |
| **Total Operating Activities** | $ 247,379.45 | $ 158,463.84 | $ 137,529.73 | $ 113,009.72 | $ 204,237.89 | $ 123,751.49 | $ 119,965.58 | $ 115,765.72 |