**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                             CASE NO.:   6:20-bk-02684-LVV

**DM World Transportation, LLC,**                  CHAPTER 11

      Debtor.
_____/

**DEBTOR'S MOTION FOR AUTHORITY TO**
**ASSUME EXECUTORY CONTRACT WITH COMDATA, INC.**

    **DM World Transportation, LLC** ("DM World" or the "Debtor") by and through its undersigned counsel, hereby moves the Court for entry of an order authorizing it to assume an executory contract with Comdata, Inc. ("Comdata"). In support of this Motion, the Debtor states as follows:

**Jurisdiction**

    1.    The Court has jurisdiction over this case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 1334 and 157.

    2.    Venue of this case in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    Resolution of this motion is a core proceeding in which the Court is authorized to enter a final order by 28 U.S.C. § 157(b)(2)(A), (M) and (O); and the Court may enter a final order consistent with Article III of the United States Constitution.

    4.    The statutory bases for the relief sought in this motion are 11 U.S.C. §§ 105, 363, and 365. This Motion is brought pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**Background**

    5.    On May 12, 2020 (the "Petition Date"), Debtor filed its petition for relief under

Chapter 11 of Title 11 of the United States Code ("Code"). No trustee has been appointed and the Debtor continues to operate its business and manage its property as a debtor-in-possession under §§ 1107 and 1108 of the Code.

6. DM World is a Florida Limited Liability Company based in Longwood, Florida. DM World is a full truck load carrier operating an over-the-road trucking fleet, (the "OTR Fleet"), with 182 trucks (160 are subleased to an affiliate) and 350 dry van trailers that transport goods across the forty-eight contiguous States.

7. As of the filing of this Motion, no official committee of unsecured creditors has been appointed, and no request for appointment of a chapter 11 trustee or examiner has been made.

8. Prior to the Petition Date, on or about June 26, 2017, the Debtor and Comdata entered into an annually renewable contract entitled Comdata Transportation Services Standard Customer Agreement (the "Agreement"). A copy of the Agreement is attached to this Motion as **Exhibit "A"**.

9. As of the Petition Date, the Agreement was executory.

10. Under the Agreement, the Debtor is to receive fuel-related transportation services from Comdata. These fuel-related transportation services are essential to the continuing operation of the Debtor. The Debtor has determined—in its best business judgment—that it is in the best interest of the Debtor and the Debtor's estate to assume the Agreement

**Request for Relief**

11. The Debtor files this Motion seeking authorization from the Court to assume the Agreement between it and Comdata. As part of the assumption, Debtor will pay $3,000 per day toward cure of the prepetition balance (about $270,000), and prepay at least $2,500 per day for post-petition fuel, until the prepetition balance is paid in full.

12. Comdata consents to the assumption of the Agreement.

13. A proposed Order is tendered herewith as **Exhibit "B"**.

**WHEREFORE**, for the reasons stated herein, the Debtor respectfully requests the Court enter an order granting this Motion and authorizing the Debtor to assume the Agreement, and for all other appropriate relief.

**RESPECTFULLY SUBMITTED** this 26th day of May 2020.

/s/ R. Scott Shuker
R. Scott Shuker
Florida Bar No.: 984469
rshuker@shukerdorris.com
Mariane L. Dorris
Florida Bar No.: 0173665
mdorris@shukerdorris.com
John B. Dorris
Florida Bar No.: 0093744
jdorris@shukerdorris.com
**SHUKER & DORRIS, P.A.**
121 S. Orange Ave., Suite 1120
Orlando, Florida 32801
Tel: (407) 337-2060
Fax: (407) 337-2050
*Attorneys for the Debtor*

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-6<br>Case 6:20-bk-02684-LVV<br>Middle District of Florida<br>Orlando<br>Tue May 26 13:56:38 EDT 2020 | DM World Transportation LLC<br>450 S. Ronald Reagan Blvd.<br>Longwood, FL 32750-5405 | ADP Augusta<br>One ADP Drive<br>Augusta, GA 30909-9373 |
| BANK OF AMERICA, N.A.<br>c/o Mark E. Steiner, Esquire<br>Liebler Gonzalez & Portuondo<br>44 West Flagler Street, 25th Floor<br>Miami, FL 33130-1817 | (p)BANK OF AMERICA<br>PO BOX 982238<br>EL PASO TX 79998-2238 | Bondar Insurance Group<br>619 Enterprise Dr., Ste. 202<br>Oak Brook, IL 60523-5602 |
| BowMan Sales & Equipment Inc<br>10233 Governor Lane Blvd<br>Williamsport, MD 21795-4029 | CenterState Bank, N.A.<br>c/o Grey Squires-Binford, Esq.<br>Post Office Box 1913<br>Orlando, FL 32802-1913 | Comdata<br>5301 Maryland Way<br>Brentwood, TN 37027-5028 |
| DAT Solution<br>PO Box 783801<br>Philadelphia, PA 19178-3801 | IBERIABANK<br>c/o Zachary J. Bancroft, Esq.<br>200 S. Orange Ave., Ste. 2900<br>Orlando, FL 32801-3448 | Love's Travel Stop<br>2766 US-17 S<br>Brunswick, GA 31523-7775 |
| NCS Collection (Bridgestone)<br>PO Box 24101<br>Cleveland, OH 44124-0101 | Passaic Industrial Property<br>co Law Office of Steven Lang<br>1 Broadway, Ste. 201<br>Denville, NJ 07834-2773 | Penske<br>2177 W. Landstreet Road<br>Orlando, FL 32809-7907 |
| Premier Trailer<br>5201 Tennyson Parkway<br>Suite 205<br>Plano, TX 75024-4116 | Procon Fleet - Spireon<br>16802 Aston Street<br>Irvine, CA 92606-4835 | RTS Financial Services, Inc.<br>c/o Harris J. Koroglu, Esq.<br>Shutts & Bowen, LLP<br>200 S Biscayne Blvd #4100<br>Miami, FL 33131-2362 |
| Ryder Truck Rental, Inc.<br>6000 Windward Parkway<br>Alpharetta, GA 30005-8882 | Ryder Truck Rental, Inc.<br>c/o James E. Shepherd, Esq.<br>ForsterBoughman<br>2200 Lucien Way, #405<br>Maitland, FL 32751-7048 | Spireon<br>16802 Aston Street<br>Irvine, CA 92606-4835 |
| Star Leasing<br>PO Box 76100<br>Cleveland, OH 44101-4204 | Star Leasing Co.<br>c/o Paul J. Battista, Esq.<br>Genovese Joblove & Battista, P.A.<br>100 SE 2nd Street, Suite 4400<br>Miami, FL 33131-2118 | TCF National Bank<br>c/o Michael A. Tessitore, Esq.<br>Moran Kidd Lyons Johnson Garcia, P.A.<br>111 N. Orange Avenue, Suite 900<br>Orlando, FL 32801-2307 |
| TruckNRoll<br>9880 Sidney Hayes Rd<br>Orlando, FL 32824-8127 | Tucker, Albin & Assoc.<br>1702 N Collins Blvd, Ste 100<br>Richardson, TX 75080-3662 | Verizon Connect<br>1100 Winter Street<br>Suite 4600<br>Waltham, MA 02451-1453 |
| Volvo Financial Services Div of VFS US LLC<br>c/o Nelson Mullins Broad and Cassel<br>Nicolette C Vilmos Esq<br>390 N Orange Ave Ste 1400<br>Orlando FL 32801-1687 | Zachary J Bancroft +<br>Baker, Donelson, Bearman, Caldwell & Ber<br>Caldwell & Berkowitz, PC<br>P.O. Box 1549<br>Orlando, FL 32802-1549 | Paul J Battista +<br>Genovese Joblove & Battista PA<br>100 Southeast 2nd Street<br>44th Floor<br>Miami, FL 33131-2100 |

R Scott Shuker +
Shuker & Dorris, P.A.
121 South Orange Avenue
Suite 1120
Orlando, FL 32801-3238

Michael A Tessitore +
Moran Kidd Lyons Johnson & Berkson PA
111 N. Orange Avenue
Suite 900
Orlando, FL 32801-2307

United States Trustee - ORL +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Roger J Haughey II+
Sivyer Barlow & Watson,PA
SunTrust Financial Centre
401 East Jackson Street, Suite 2225
Tampa, FL 33602-5213

Miriam G Suarez +
Office of the United States Trustee
George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Nicolette C Vilmos +
Nelson Mullins Broad and Cassel
390 North Orange Avenue, Suite 1400
Orlando, FL 32801-1687

Grey Squires-Binford +
Killgore Pearlman Stamp Denius & Squires
PO Box 1913
Orlando, FL 32802-1913

Harris J Koroglu +
Shutts & Bowen LLP
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131-2362

Mark E Steiner +
Liebler, Gonzalez & Portuondo, P.A.
44 W. Flagler Street, 25th Floor
Miami, FL 33130-1808

James E Shepherd +
Forster, Boughman & Lefkowitz
2200 Lucien Way, Suite 405
Maitland, FL 32751-7048

Alexis A Leventhal +
Reed Smith LLP
225 Fifth Avenue
Pittsburg, PA 15222-2716

James Gordon +
Gordon Law Firm Co, LPA
7677 Patterson Road
Hillard, OH 43026-9494

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of America Credit
P.O. Box 982238
El Paso, TX 79998

End of Label Matrix
Mailable recipients    42
Bypassed recipients     0
Total                  42

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

**In re:**                                                            **CASE NO.:   6:20-bk-02684-LVV**

**DM WORLD TRANSPORTATION LLC,**           **CHAPTER 11**

      **Debtor.**
_____/

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true copy of the **DEBTOR'S MOTION FOR AUTHORITY TO ASSUME EXECUTORY CONTRACT WITH COMDATA, INC.**, has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: Debtor, c/o Beck Tokhtaev, 450 South Ronald Reagan Boulevard, Longwood, Florida 32750; RTS Financial Service, Inc., c/o Harris J. Koroglu, Esq., Shutts & Bowen LLP, 200 South Biscayne Blvd., Suite 4100, Miami FL 33131 (hkoroglu@shutts.com); Ryder Truck Rental, Inc., c/o James E. Shepherd, Esq., Forster Boughman, 2200 Lucien Way, Suite 405, Maitland, Florida 32751 (shepherd@fbl-law.com and service@fbl-law.com); BMO Harris, N.A., c/o Alexis A. Leventhal, Esq., REED SMITH LLP, Reed Smith Centre, 225 Fifth Avenue, Pittsburgh, PA 15222 (aleventhal@reedsmith.com); Bank of America, N.A., c/o Mark E. Steiner, Esq., Liebler, Gonzalez & Portuondo, Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130; Premier Trailer Leasing, Inc., c/o Roger J. Haughey, II, Esq., Sivyer Barlow & Watson, P.A., 401 E. Jackson Street, Suite 2225, Tampa, FL 33602 (rhaughey@sbwlegal.com and rjhassistant@sbwlegal.com); Iberiabank, c/o Zachary J. Bancroft, Esq., Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 200 South Orange Avenue, Suite 2900, Post Office Box 1549, Orlando, Florida 32802-1549 (zbancroft@bakerdonelson.com, sdenny@bakerdonelson.com, and bkcts@bakerdonelson.com); Star Leasing Co., c/o Gordon Law Firm Co, LPA, Attn: James H. Gordon, Esq., 7677 Patterson Road, Hillard, OH 43026 (jgordon@gordonlawco.com); Genovese Joblove & Battista, P.A., Attn: Paul J. Battista, Esq., 100 SE 2nd Ave, Suite 4400, Miami, Florida 33131 (pbattista@gjb-law.com); all parties entitled to receive CM/ECF noticing; all parties listed on the 1007-2 Parties-in-Interest list as shown on the matrix attached to the original of this motion filed with the Court; and the U.S. Trustee's Office, 400 W. Washington Street, Suite 1120, Orlando, Florida 32801, this 26th day of May 2020.

                                            /s/ R. Scott Shuker
                                            R. Scott Shuker, Esq.

# **EXHIBIT "A"**

(Agreement)


Payment Innovation

# Comdata Transportation Services
# Standard Customer Agreement

Agreement #: <u>00097254.0</u>

**Company Name:** DM World Transportation LLC

**Physical Address:** 8026 Sunport Dr

Suite 304

**City:** Orlando     **State:** FL     **Zip:** 32809

**FID#:**

---

This Agreement is made and entered into by and between the Customer identified above and Comdata (as defined below) and sets forth the terms and conditions pursuant to which Comdata will provide an Account to Customer as provided for herein.

1. **Account and Services.** (a) <u>General</u>. Customer requires certain fleet services in conjunction with transportation services by Customer's drivers, staff and representatives (whether employees or independent contractors). Comdata will provide Customer with the services selected by Customer on <u>Schedule A</u> (the "Services"), which may include an account (the "Account") and Comdata cards ("Cards") and Comchek® drafts, through the use of which Customer may access certain card networks ("Networks"), and the financial information and other services provided for in this Agreement and any Service Schedule(s) attached hereto. Customer agrees to administer the program and utilize the Services in accordance with Comdata's instructions. Customer represents that it is either a governmental, non-profit or commercial business enterprise and agrees that the use of the Services and the Account are for business purposes only and will not be used for personal, family or household purposes. Further, the Services and the Account may be used only for valid and lawful purposes. Customer is responsible for notifying its employees, agents, and other representatives to whom the Services are made available of the policies and procedures for use of the Services. All Cards issued to Customer shall remain the property of the issuer and must be returned upon request.

(b) <u>Express Cash Debit Service</u>. Comdata offers a debit card service (the "Debit Service") pursuant to which Customer may distribute funds, including wages, to employees, drivers and/or other authorized personnel by loading such funds on PIN-activated Cards that access certain automated teller and point-of-sale debit networks (the "Networks"). The Cards accessing the Networks are issued by Regions Bank, a member of the Networks, or such other substitute Network member as designated by Comdata. In the event that Customer subscribes to and/or uses the Debit Service, Customer understands and agrees that (i) all such transactions through the Debit Service are subject to availability of funds according to respective account balance(s), the authorization and approval of each respective Card and transactions effected thereby, Customer's current credit relationship with Comdata and applicable laws, rules and regulations, including, without limitation, those of Networks and (ii) Comdata may modify the Debit Service and the transactions available in connection therewith based upon, among other things, changes in the foregoing. Customer agrees to comply with Comdata's operational instructions for the implementation and usage of the Debit Service, which operational instructions may be modified by Comdata from time to time. In addition to the transaction fees set forth in <u>Schedule A</u> hereof relating to the Debit Service, Customer shall pay to Comdata the principal amount of any money withdrawn from ATMs or POS purchases. Such fees are exclusive of any additional fees that may be imposed by owners of ATMs, Networks or their respective agents. Additionally, for international debit transactions, the transaction amount will include a MasterCard cross-border fee of 90 basis points and a MasterCard currency conversion fee of 20 basis points.

(c) <u>Payroll Distribution.</u> This provision applies to the use of the Debit Service by Customer for distribution of payroll to employees. For purposes of this Agreement, the parties acknowledge and agree that the Cards are "payroll cards" as defined in Regulation E (12 CFR Part 205). Effective July 1, 2007, Comdata will comply with Regulation E as it applies to payroll cards. In accordance with the foregoing and to assist Comdata's compliance efforts, Customer represents, warrants and covenants that it will only distribute Cards to employees where Company has provided the employees with the following: (i) a written notice that the Card is not available for use until activated by the employee and that the employee may choose not to use the Card, (ii) a copy of Comdata's Cardholder Agreement supplied with the Card, and (iii) Comdata's Cardholder Fees disclosure form (in at least 12 point font) provided by Comdata. In the event of a change in terms regarding the use of the Debit Service for the provision of payroll, Customer shall distribute any information provided by Comdata for delivery to a Cardholder or, at Comdata's discretion, provide current address and contact information for each employee using a Card to receive wages or compensation. Customer is solely responsible for compliance with all applicable federal, state and local laws, rules and regulations relating to payroll, compensation and employment matters, including, without limitation, proper withholding, and timely remittance of, any and all taxes related thereto (e.g., local, state and federal income, payroll or social security taxes), and Customer agrees to indemnify and hold Comdata and its affiliates harmless from any and all liabilities, including interest and penalties, which are or may be imposed on Comdata or any of its affiliates pursuant to any such laws. Customer's obligations under this subsection shall survive the termination or expiration of this Agreement, regardless of whether any such liabilities arise before or after the effective date of any such termination or expiration.



2. **Credit Limit; Credit Information.** If applicable, Comdata will establish a credit limit for the Account. The credit limit is subject to periodic review and adjustment by Comdata in its sole discretion. Customer shall provide Comdata with such financial information as Comdata may reasonably require, including, without limitation, annual financial statements within a reasonable time after Customer's fiscal year-end and interim financial statements as requested by Comdata. Customer authorizes Comdata to make any credit investigation Comdata deems necessary and appropriate and to request reports from credit bureaus in connection with this Agreement or any update, renewal or extension of credit. Comdata may furnish information with respect to Customer's Account to credit bureaus or other who may properly receive such information. Customer shall repay Comdata for all credit extended by Comdata and shall not allow its unpaid balance, including unbilled transactions, fees and other charges on the Account, to exceed its credit limit at any time. If Customer exceeds its credit limit, then Comdata may require immediate payment, suspend further Service, and assess additional fees.

3. **Security.** From time to time Comdata may request Customer to provide security for the performance when due of Customer's obligations hereunder. Customer understands and agrees that it is under no obligation to provide Comdata with such security, but the refusal to provide security when requested may result in adverse credit determinations by Comdata. Any security provided shall be in the amount and form as required by Comdata in its reasonable discretion. The Account will not be available to Customer until such security is accepted by Comdata in its sole discretion. Comdata may refuse to extend credit until such time as any such security is received by Comdata in form and substance acceptable to Comdata in its sole discretion.

4. **Fees and Payments Terms.** (a) <u>Payment.</u> Current fees for use of the Account and Services are set forth on <u>Schedule A</u>. Comdata shall have the right to change or add fees upon giving fifteen (15) days written notice thereof to Customer. In addition, Comdata may increase fees 3% for each year of the term after the initial year as a cost of living adjustment. If the total fees on Customer's Account equal less than $25.00 for any month, then Customer shall pay a minimum monthly account maintenance fee of $25.00 for such month. Customer shall make payment to Comdata of the full amount of all transactions on its Account plus the applicable fees in accordance with the payment terms on <u>Schedule A</u>; any failure to do so is a material breach of this Agreement. Any payments made by check shall not be deemed to have been made until such check is honored upon presentation for payment at Customer's bank.

(b) <u>Dishonored Payments.</u> Each time Customer's check or other payment method is dishonored when presented for payment at Customer's bank, Customer shall pay to Comdata a service charge of $20.00 or the maximum amount allowed by law, whichever is less.

(c) <u>Late Payment and Default Interest.</u> If Customer does not make full payment of the Total Amount Due on the due date, then Customer shall pay a late payment fee equal to the greater of: (i) $75 or (ii) 9.99% of the past due portion of the Total Amount Due (excluding any previous late fees and any default interest charges). In no event will such late charge exceed the lesser of $5,000 or the maximum amount permitted by applicable law. In addition, in the event the Total Amount Due is not paid by the due date, then Comdata may assess a default interest charge at a rate equal to the weekly average prime loan rate as published by the Federal Reserve plus 4% per annum. The default interest is assessed on the Total Amount Due (excluding any late fees and any previous default interest charges) for the period of time such amount remains unpaid beyond the due date. In no event will the default interest rate exceed the maximum rate permitted by applicable law.

5. **Term;Termination.** This Agreement is for an initial term of one (1) year commencing on the date the Agreement is approved by Comdata. Thereafter, the Agreement shall automatically renew for consecutive, successive terms of one (1) year each unless and until one party provides notice of non-renewal to the other party not less than ninety (90) days prior to the end of the then-existing term or unless terminated earlier pursuant to the terms hereof. Comdata may immediately terminate this Agreement and the Services in the event the Network prohibits the Services, the Issuing Bank ceases to be a Network member or the Issuing Bank ceases to be the Card issuers, provided that Comdata shall endeavor to provide Customer with advance notice of any such event. In the event of Customer's breach or default under the credit limit and payment terms of this Agreement, Comdata shall have the right to immediately suspend further Services until such breach is cured. In the event such breach or default is not cured within a reasonable period of time, Comdata may thereafter terminate this Agreement or the applicable Service Schedule. In the event of any other default under this agreement by either party, the non-defaulting party shall provide the defaulting party written notice of the nature of the default. The defaulting party shall have thirty (30) days from the date of the default notice to cure the default, and if the default is not cured within such time period, then the non-defaulting party may thereafter terminate this Agreement or the applicable Service Schedule with written notice. In addition to any other rights of termination, either party may terminate this Agreement or any Service Schedule upon prior written notice with respect to any individual state or jurisdiction if the terminating party can demonstrate, with documentary support, that changes in applicable laws or regulations or the interpretation thereof will make the performance of such party's obligations under this Agreement or Service Schedule not commercially feasible. The effective date of termination under the preceding sentence will be ninety (90) days from the date notice is delivered, or upon the effective date of the new law or regulation, whichever occurs sooner. Customer's obligation to pay for all outstanding amounts incurred before the effective date of termination of this Agreement or any Service Schedule shall survive termination.

6. **Anticipated Volume Commitment.** During each calendar month of the initial and each renewal term of the Agreement, Customer agrees to use the Account for not less than eighty-five percent (85%) of its transactions which may be effected by the Account (e.g., fuel and cash advance transactions). Customer and Comdata agree that the aggregate number of monthly transactions is set forth on <u>Schedule A</u>, and eighty-five percent (85%) of that number of transactions shall be defined as the "Minimum Monthly Volume". If during any month the aggregate number of transactions effected by the Customer is less than the Minimum Monthly


Payment Innovation

Volume, then Customer shall pay to Comdata an amount equal to the difference obtained by subtracting the actual number of transactions in any given month from the Minimum Monthly Volume and multiplying such number by the applicable Comdata Card Funded Fuel Level C rate for Fuel and Cash transactions, Express Comchek® rate for Express Comchek transactions and the Comdata Express Cash Load Fee rate for Comdata Express Cash Loads as set forth on Schedule A. If Customer terminates this Agreement at any time during the initial or a renewal term hereof or Comdata terminates this Agreement at any time upon the occurrence of an event of default, then Customer shall nevertheless remain obligated to pay the Minimum Monthly Volume fees calculated in accordance with this Section for the number of months remaining in the then-existing term after the effective date of the termination. This Section shall not apply if Customer can satisfactorily prove to a Comdata representative that its current Comdata volume is greater than eighty-five percent (85%) of its total transactions.

7. **Disputed Items.** Customer must notify Comdata in writing of any disputed item on Customer's billing statement within sixty (60) days from the date of the billing statement, or it will be deemed undisputed and accepted by Customer. Unless required by law, Comdata is not responsible for any problem Customer may have with any goods or services charged on the Account. If Customer has a dispute with a merchant, Customer must pay Comdata and attempt to resolve the dispute with the merchant prior to sending the dispute to Comdata. Comdata is not responsible if any merchant refuses to honor Cards.

8. **Account Access.** (a) *Access.* Customer's representatives shall access the Account only as required to administer Customer's Card program and for no other purpose. (b) *Unauthorized Access to Account.* Customer agrees to notify Comdata immediately of any unauthorized use of, or access to, the Account or any passwords or other security codes or procedures used to access the Account or Comdata's system. Customer acknowledges and agrees that it is liable for unauthorized or fraudulent use of the Account or any Cards. (c) *Lost or Stolen Cards.* Customer will not be liable for unauthorized charges that occur after Customer notifies Comdata of the loss or theft of a Card issued to Customer.

9. **Limitation of Liability.** Comdata shall not be liable for any failure to perform due to acts of God, acts of government or MasterCard or regulatory bodies which significantly inhibit or prohibit the Service, wars, acts of terrorism, fires, floods, explosions, natural catastrophes, civil disturbances, strikes, riots, unusually severe weather (such as tornadoes), or failures or fluctuations in electrical power, heat, light, air conditioning, computer or telecommunications services or equipment or any other cause not within the reasonable control of Comdata. COMDATA'S SOLE RESPONSIBILITY, AND CLIENT'S SOLE REMEDY, FOR DAMAGES FOR ERROR, DELAY, OR ANY ACTION OR FAILURE TO ACT SHALL BE LIMITED TO DIRECT MONEY DAMAGES IN AN AMOUNT NOT TO EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT WITH RESPENCT TO THE DEFECTIVE SERVICE CAUSING THE DAMAGE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE LOSS. IN NO EVENT SHALL EITHER PARTY BE RESPONSIBLE FOR INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL OR PUNITIVE DAMAGES, REGARDLESS OF WHETHER SUCH PARTY WAS MADE AWARE OF THE POSSIBILITY OF SUCH DAMAGES. COMDATA MAKES NO REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

10. **Equipment.** Comdata may provide Customer with equipment to establish a communications link with Comdata for the fee set forth on Schedule A. Such equipment shall be utilized only for the purpose of accessing services provided by or through Comdata and for no other purpose, and Customer shall not alter or modify such equipment without the written consent of Comdata. Customer shall be responsible for any damage to the equipment while in its possession. The equipment shall at all times remain the property of Comdata, and, in the event of the termination of this Agreement, shall be returned by Customer to Comdata in the same condition in which it was received by Customer, ordinary wear and tear expected.

11. **Confidentiality.** Comdata and Customer agree and covenant to each other that they shall not, during the performance of this Agreement or at any time after the termination or expiration hereof, use or disclose to any third party other than during the proper performance of their duties hereunder, the confidential and proprietary information of the other party hereto ("Confidential Information"), , including, but not limited to the rates, terms, and conditions of this Agreement, technical information; transaction information; or any of the procedures, practices or confidential dealings of the other party hereto. The foregoing shall not apply to a disclosure required by law provided each party takes reasonable steps, when permissible, to notify the other party prior to such disclosure. Customer acknowledges and agrees that the application software developed, utilized and maintained by Comdata, the internal hardware utilized by Comdata, the internal operating procedures employed by Comdata, technical information, such as file record layouts, and transaction information, including without limitation Comdata card numbers and data gathered at the point-of-sale by Comdata, are Confidential Information and the exclusive and proprietary property of Comdata. The BINs (Bank Identification Numbers) assigned to the Cards are the property of the Issuing Bank.

12. **Liability of Acts of Customers, Employees and Agents.** Customer agrees to hold Comdata harmless from any and all liability resulting from the acts of any employees or agents of Customer, which acts shall include but are not limited to negligent acts and willful misconduct of such persons, or from the material breach by Customer of its express obligations under this Agreement. For purposes hereof, any person who is given authorization by Customer to use Cards, Express Checks, codes, passwords or other security codes or procedures shall be deemed an employee or agent of Customer.

13. **Right of Setoff and Recoupment.** Comdata shall have the right to setoff and apply any amounts owing by Comdata to Customer against any amounts owing from Customer to Comdata pursuant to any Agreement between Comdata and Customer or any amounts in the possession of or under the control of Comdata.



14. **Monitoring and/or Recording Communication.** Customer understands and agrees that Comdata may in its discretion, but is not obligated to, monitor and/or record any telephone calls by Customer or its employees and/or agents without any further notice for quality control purposes and for its own protection. Comdata may also monitor, record, and/or make a record of any other communications between Customer or its employees and/or agents and Comdata without any further notice, and Comdata may use the resulting information for internal purposes or as may be required by applicable law. Customer hereby consents to Comdata's monitoring and/or recording of any telephone calls and communications with Customer or its employees and/or agents. Customer acknowledges and understands Comdata may not record all telephone calls or communications, and Comdata does not guarantee that recordings of any particular telephone calls or communications will be retained or be capable of being retrieved.

15. **Taxes.** Customer is solely responsible for any and all tax related obligations in connection with using the Services or Cards, including, without limitation, proper withholding and reporting, and Customer agrees to indemnify and hold Comdata and its affiliates harmless from any and all liabilities, including interest and penalties, which are or may be imposed on Comdata or any of its affiliates pursuant to any such federal, state and local tax laws and regulations.

16. **Press Releases, Publicity, Etc.** Customer shall not issue any press release or disseminate similar publicity or other information regarding this Agreement or the Services for Customer or utilizing the trademarks, service marks, trade names or logos of Comdata, Issuing Bank or the Networks, including, without limitation, web site information, instructional or marketing materials or brochures, without the express prior written approval of Comdata, Issuing Bank or the Networks, as appropriate.

17. **Notices.** All written notices required to be given by this Agreement shall be deemed to be duly given if delivered personally or sent by U.S. mail or overnight courier to Comdata, 5301 Maryland Way, Brentwood, TN 37027, attn.: President, with a copy to General Counsel, or to Customer at the address listed on the Cover Page of this Agreement.

18. **Provider of Services.** "Comdata" means Comdata Inc., a Delaware corporation and one or more of its subsidiaries designated by it to provide the applicable services hereunder, including, without limitation, Comdata Network, Inc. of California, the licensed money transmitter in the State of California, which provides the licensed money transmission services (including Comchek Drafts) to customers with a billing address in California, and Comdata TN, Inc., the licensed money transmitter/check seller in other states, which provides licensed money transmission/check seller services (including Comchek Drafts) to customers with billing addresses in other states. Customer hereby agrees that for our Accounts with a billing address in the State of California, all Comcheks that are used are issued by Comdata Network, Inc. of California regardless of the name of the issuer printed on the Comchek paper instrument.

19. **Government Regulation.** IMPORTANT INFORMATION ABOUT PROCEDURES FOR BEING A COMDATA CUSTOMER- To help the government fight the funding of terrorism and money laundering activities, federal law requires Comdata to obtain, verify, and record information that identifies Customer (and any guarantor or co-maker) as part of initial and on-going customer review processes. Therefore, Comdata may, at Comdata's option, require Customer to provide various identifying information that will allow Comdata to properly identify Customer, which may include but not be limited to name, address, taxpayer identification number, and other information. Customer represents and covenants that (a) Customer and any person to whom Customer provides a Card is not currently and shall not become subject to any law, regulation or list of any government agency (including, without limitation, the U.S. Office of Foreign Asset Control list) that prohibits Comdata from making any advance or extension of credit to Customer or from otherwise conducting business with Customer, and (b) Customer shall provide to Comdata, and as applicable the Network and Issuing Bank, when requested, documentary and other evidence of Customer's identity or the identity of any person to whom Customer provides a Card, so that Comdata may comply with any applicable law or regulation or Comdata's AML Policy.

20. **Independent Contractors.** None of the provisions of this Agreement is intended to create nor shall be deemed or construed to create any relationship between the parties hereto other than that of independent entities contracting with each other hereunder solely for the purpose of effecting the provisions of this Agreement. Neither of the parties hereto, nor any of their respective employees, shall be construed to be the employer of the other. Customer and Comdata agree that Comdata is only providing services under this Agreement as an independent contractor.

21. **Miscellaneous.** (a) This Agreement shall be governed by the laws of the State of Tennessee without regard to the choice of law rules of such state. Any action to enforce or interpret this Agreement may be brought in the appropriate judicial forum located in Nashville, Davidson County, Tennessee, and Customer does hereby consent to such jurisdiction and waives any objections thereto. (b) Upon Comdata's reasonable request, Client agrees to promptly complete and deliver such further documents as necessary or appropriate in connection with this Agreement. (c) Failure to insist upon strict compliance with any of the terms or conditions of this Agreement shall not be deemed a waiver of such term or condition, nor shall waiver or relinquishment of any right or power hereunder at any time be deemed a subsequent waiver or relinquishment of such right or power  (d) In addition to its rights under Sections 2,3 and 4, Comdata may change the terms of this Agreement at any time, including, without limitation, in the event of any future changes to applicable law or the interpretation thereof or changes in the Network rules, and will notify Customer of any such changes at least thirty (30) days prior to the effective date of the change, unless a shorter notice period is required by applicable law or Network rules. If Customer does not agree to any such change, it may provide written notice to Comdata of its objection to such change within ten (10) days of receipt of notice from Comdata of the change, and upon receipt of such objection, Comdata may withdraw the change by written notice to Customer. If Comdata does not withdraw the change, it will become effective on the date provided in the original notice of change to Customer, provided that Customer may terminate the Agreement



with written notice to Comdata within fifteen (15) days of the effective date of such change. Unless Customer provides notice of its objection as set forth above and exercises its right to terminate in the event Comdata does not withdraw such change, retention or use of the Account after the effective date of any such change will constitute acceptance of the new terms. (e) This Agreement (including any exhibits, schedules, amendments or addenda attached hereto and made a part hereof), constitutes the entire agreement of the parties with respect to its subject matter; supersedes all prior agreements and understandings, oral or written, of the parties with respect to this subject matter; and except as expressly set forth herein, may only be modified by a writing signed by Comdata and Customer. (f) Customer shall be bound by and comply with all applicable laws and regulations ("applicable law") and all payment network rules, guidelines, requirements, and prohibitions ("network rules") regarding Customer's use of the Account and Card(s). Customer shall permit Comdata to reasonably investigate or audit Customer's compliance with applicable law and network rules regarding Customer's use of the Account and Card(s). (g) In the event of any conflict between the provisions of the General Terms and Conditions and any Service Schedule, the provisions of the applicable Service Schedule shall control with respect to the applicable Service. (h) Any provision of this Agreement that by its nature is intended to survive termination of this Agreement shall so survive and shall remain enforceable after such termination. (i) The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement. (j) In case one or more of the provisions contained in this Agreement or any application thereof shall be invalid, illegal, or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions contained herein and any other application thereof shall not in any way be affected or impaired hereby. (k) No provision of this Agreement shall be construed in favor of, or against, any particular party by reason of any presumption with respect to the drafting of this Agreement; both parties, having fully participated in the negotiation of this Agreement, hereby agree that this Agreement shall not be subject to the principle that a contract would be construed against the party which drafted the same. (l) Customer may not transfer or assign this Agreement without the prior written consent of Comdata, which consent may not be unreasonably withheld. (m) Customer acknowledges and agrees that electronic records and signatures and facsimile copies of signatures shall have the full legal effect of a writing. (n) In the event that the Account or any outstanding amount under this Agreement is turned over to a collection agency or an attorney for collection of unpaid amounts or otherwise to enforce this Agreement, Customer agrees to pay all costs, fees and expenses of such agency or attorney, including, without limitation, court costs and out-of-pocket expenses.

**ACCEPTED AND AGREED:**

CUSTOMER:
By: _[signature]_
Name: Abduvosit Razikov
Title: CEO
Date: 06/26/2017

COMDATA INC.
By: _[signature]_
Name: Chris Gievening
Title: Director of Sales
Date: 6/24/17



## Comdata Transportation Services
## Standard Customer Agreement – SCHEDULE A

Customer: DM World Transportation LLC

Agreement #: 00097254.0

This Schedule A sets forth certain terms and conditions to Customer's Comdata Transportation Services Standard Customer Agreement.

**ACCOUNT AND SERVICE FEES:** *Fees are per transaction unless otherwise indicated*

| | | | |
|---|---|---|---|
| Comdata Card Funded Fuel Level A | $ 0.50 | **Comdata Express Cash** | |
| Comdata Card Funded Fuel Level B | $ 1.25 | Express Cash Load Fee (per load) | $ |
| Comdata Card Funded Fuel Level C | $ 1.25 | Comchek Draft Fee from Express Cash Account | $ |
| Cash add-on fee w/purchase of Fuel | $ 0.25 | Manual Direct Deposit Fee | $ |
| Comdata Card Funded Cash Only | $ 1.25 | Automatic Direct Deposit Fee | $ |
| Comdata Card Non-Funded Fuel Data Capture | $ 0.75 | **Comdata ATM Access** | |
| Comdata Card Terminal Fuel Data Capture | $ 0.50 | IVR Balance Inquiry Fee | $ 0.50 |
| Comdata Non-Fuel* (Product Code) | $ 1.00 | ATM Access Fee – US | $ 1.50 |
| | | ATM Access Fee – International | $ 4.00 |
| | | ATM Balance Inquiry Fee | $ 1.50 |
| Express Comchek** (Per $500 Increments) | $ 3.50 | ATM Balance Decline Fee | $ 1.00 |
| Express Comchek per draw fee** (first draw is free) | $ 2.00 | POS Inquiry Fee | $ 0.50 |
| | | POS Decline Fee | $ 0.50 |
| | | POS Debit Fee | $ 0.50 |

*Parking, Product Code C will not be assessed a fee

**Express Check only customers will be assessed a monthly administrative fee of $150.00

### MINIMUM MONTHLY TRANSACTIONS

| | | |
|---|---|---|
| Comdata Card Fuel and Cash Transactions | 1,001 per month | |
| Set Up Fee (one time) | $ 75.00 | |
| Customer Service Fee (per task/activity) | $ 1.50 | Billing Frequency - 1 day(s) |
| Monthly Fee for Faxed or Mailed Invoices | $ 22.00 | Payment Frequency - 7 day(s) |
| Monthly Fee for Faxed or Mailed Reports | $ 22.00 | |
| *No charge for internet invoice or reports* | | |
| FleetAdvance (per month) | $ 57.67 | |


**COMDATA**
Payment Innovation

Company Name: DM World Transportation LLC

## Comdata eCash
## Cardholder Fees and Best Practices

The fees listed below will be deducted by Comdata from your eCash balance for each transaction as applicable.

| | |
|---|---|
| Draft Registration | $ |
| ATM Withdrawal | $1.50* |
| ATM Balance Inquiry | $1.50* |
| ATM Decline | $1.00* |
| Point-of-Sale Purchase | $0.50* |
| Point-of-Sale Decline | $0.50* |
| IVR Balance Inquiry | $0.50 |
| Automated Direct Deposit | $         * |
| Manual Direct Deposit | $         * |
| Customer Service (live support) | No Charge for Balance Inquiry* |
| Website: www.cardholder.comdata.com | No Charge for Balance Inquiry* |
| Mobile App: www.comdata.com/FleetAdvanceMobile | No Charge for Balance Inquiry** |

* ATM owners and other third parties may charge additional fees (even for a balance inquiry without completing a funds transfer) that will be deducted from your balance.
** Your mobile service provider may assess fees associated with the use of your device to utilize the application.

Here are some other helpful hints on how to use your card wisely:

- Register for an account online at www.cardholder.comdata.com to check your balance and review recent transactions. Important information regarding the use of your card may also be available.
- Download the free mobile app at www.comdata.com/FleetAdvanceMobile to check your balance and manage direct deposit transfers.
- Always check your balance online or with the mobile app before making a purchase or withdrawal. You can avoid decline fees by verifying you have enough money on your card.
- Always select the 'checking' option when withdrawing cash from an ATM.
- Combine transactions by selecting the option for cash back when making a purchase.
- Call customer service if you have any trouble using your card.

**Exhibit "B"**

(Proposed Order)

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

IN RE                                                    CASE NO.:    6:20-bk-02684-LVV

**DM WORLD TRANSPORTATION LLC,**           CHAPTER 11

    **Debtor.**
_____

**ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO
ASSUME EXECUTORY CONTRACT WITH COMDATA, INC.**

This matter is before the Court on the Debtor's Motion for Authority to Assume Executory Contract with Comdata, Inc. (the "Motion"). Having considered the foregoing, and being otherwise duly advised, the Court now GRANTS the Motion in all respects and specifically ORDERS that Debtor is hereby authorized to assume the Agreement, as defined in the Motion, entered into by and between the Debtor and Comdata Inc. on or about June 26, 2017 and to pay for all obligations arising under the terms set forth in the Motion.

SO ORDERED.

###

Attorney R. Scott Shuker shall serve a copy of this order on interested parties and file a proof of service within three (3) days of entry of the order.