**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE:**                                              **CASE NO.: 6:20-bk-02684-LVV**

**DM WORLD TRANSPORTATION, LLC**          **CHAPTER 11**

      **Debtor.**

_____/

## AMENDED PLAN OF REORGANIZATION FOR
## DM WORLD TRANSPORTATION, LLC

COUNSEL FOR DEBTOR

R. SCOTT SHUKER, ESQ.
MARIANE L. DORRIS, ESQ.
JOHN B. DORRIS, ESQ.
SHUKER & DORRIS, P.A.
121 S. ORANGE AVENUE, SUITE 1120
ORLANDO, FLORIDA 32801

August 25, 2020

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                              CHAPTER 11

**DM WORLD TRANSPORTATION, LLC**          **CASE NO.: 6:20-02684-LVV**

     **Debtor.**

_____/

**AMENDED PLAN OF REORGANIZATION FOR**
**DM WORLD TRANSPORTATION, LLC**

    **DM WORLD TRANSPORTATION, LLC,** (the "Debtor" or "Reorganized Debtor" – where appropriate), by and through undersigned counsel, hereby propose the following amended plan of reorganization (the "Plan") pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

## ARTICLE I – DEFINITIONS

    For the purpose of the Plan, the following terms will have the meanings set forth below:

    1.    **Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §§ 503(b) or 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Bankruptcy Case of preserving the Debtor's Estates, including management fees, or commissions for service, compensation for legal and other services and reimbursement of expenses awarded under §§ 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

2.      **Administrative Claims Bar Date** means the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed.  The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

3.      **Allowed Administrative Claim** means all or any portion of an Administrative Claim that has been or becomes allowed by Order of the Bankruptcy Court.

4.      **Allowed Amount** shall mean the amount of an Allowed Claim.

5.      **Allowed Claim** means a Claim (a) with respect to which a Proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Bankruptcy Code § 501 and Bankruptcy Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Final Order of the Bankruptcy Court; (b) deemed filed pursuant to Bankruptcy Code § 1111(a) by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Code § 521(1) and Rule 1007(b) and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court.  Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Final Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by the Debtor within any applicable period of limitation fixed by the Plan, by Rule 3003, or any Final Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order.  Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Final Order of the Bankruptcy Court, an

Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

6.        **Allowed Interest** means an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) that has been scheduled in the list of equity security holders prepared and filed by the Debtor with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Final Order of the Bankruptcy Court.

7.        **Allowed Priority Tax Claim** means a Priority Claim pursuant to § 507(a)(8) of the Bankruptcy Code, to the extent such Priority Claim is or becomes an Allowed Claim.

8.        **Allowed Secured Claim** means a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided herein.

9.        **Allowed Unsecured Claim** means an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

10.       **Assets** means each and every item of Property of the Debtor's Estate and every interest of the Debtor as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, whether or not controlled by the Debtor, and includes without limitation: (a) all real and personal property and Cash; (b) all rights, privileges, Claims, demands, or Causes of Action, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law; (c) any and all amounts owed to the Debtor, contract rights, or other rights, including without limitation rights to payment, contribution or

distribution, whether due prior or subsequent to the Petition Date; and (d) all Executory Contracts, and other contracts, agreements, licenses, and leases.

11. **Ballot** means the ballot accompanying the Plan and Disclosure Statement that will be sent to all Creditors entitled to vote on the Plan, on which such Creditors will indicate their vote to accept or reject the Plan.

12. **Ballot Date** means the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

13. **Bank of America** means Bank of America Leasing and Capital, LLC.

14. **Bankruptcy Case** means the Debtor's bankruptcy cases that are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Bankruptcy Code, Case No: 6:20-bk-02684-LVV.

15. **Bankruptcy Code** or **Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, in effect during the Bankruptcy Cases.

16. **Bankruptcy Court** or **Court** means the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which the Bankruptcy Case is pending, and any Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

17. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, including any amendments thereto, as they may be amended from time to time during the Bankruptcy Case.

18. **Bar Date** means the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

19. **BMO** means BMO Financial.

20.        **Business Day** means every day except Saturdays, Sundays, federal holidays, and Florida state holidays observed by the Bankruptcy Court.

21.        **Cash** means cash or cash equivalents, including, but not limited to, checks, bank deposits, negotiable instruments, or other similar items.

20.        **Causes of Action** means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, cross-claims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, setoffs, cross-claims, counterclaims, third party claims, indemnity claims, contribution claims, and any other claims, whether known or unknown, foreseen or unforeseen, direct or indirect/derivative, choate or inchoate, in law, equity or otherwise, including but not limited to: (i) the claims for listed in Debtor's Schedules; and (ii) the right to recover transfers voidable or recoverable under Bankruptcy Code §§ 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtor, including any claims for contribution or indemnification for any unauthorized post-petition obligations or transactions and any transaction or obligation incurred by the Debtor not otherwise approved by the Bankruptcy Court; *provided, however*, that, when used in the Plan, the term Causes of Action does not include any Claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court, and specifically shall not include any claims or cause of action against the Released Party. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtor to describe such Cause of Action

with specificity in the Plan or the Disclosure Statement, and nothing in the Plan operates as a release of any of the Causes of Action except as specifically provided in the Plan.

21.    **CenterState** shall mean CenterState Bank, National Association.

22.    **Claim** means "claim" as defined in Bankruptcy Code § 101(5).

23.    **Class or Classes** means any Class into which Claims or Interests are classified pursuant to the Plan.

24.    **Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

25.    **Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et seq*., and any amendments thereof.

26.    **Confirmation** means the process leading to confirmation of the Plan, including the entry of the Confirmation Order pursuant to Bankruptcy Code § 1129.

27.    **Confirmation Date** means the date of entry of the Confirmation Order by the Bankruptcy Court on the Court's docket.

28.    **Confirmation Hearing** means the date set by the Bankruptcy Court for the hearing on confirmation of the Plan, as may be continued from time to time.

29.    **Confirmation Order** means the Final Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

30.    **Contingent** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

31.    **Creditor** means "Creditor" as defined in Bankruptcy Code § 101(1).

32.     **Creditors Committee** means the Committee of Creditors Holding Unsecured Claims created by the United States Trustee on June 2, 2020.

33.     **Daimler** means Daimler Truck Financial.

34.     **Debtor** refers to DM World Transportation, LLC.

35.     **Disallowed** means, when referring to a Claim, a Claim or any portion of a Claim that has been disallowed or expunged by a Final Order of a Court.

36.     **Disclosure Statement** means the Disclosure Statement filed by the Debtor describing the Plan and approved for distribution by the Bankruptcy Court pursuant to Bankruptcy Code § 1125, together with any amendments or modifications thereto.

37.     **Disputed Claim** means every Claim, or portion thereof, that is not an Allowed Claim and that has not yet been Disallowed.

38.     **Distribution** means a distribution to the Holders of Allowed Claims.

39.     **Effective Date** means the date 15 days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided*, *however*, that the Effective Date shall not occur until the Debtor files the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 15th day after the entry of the Confirmation Order provided that the notice called for under the Plan has been filed by the Debtor.

40.     **Equity Interests** or **Interests** means any and all issued or authorized membership interests, common stock, stock options and warrants in the Debtor.

8

41.     **Equity Purchase** shall mean the Purchase of 100% of the equity in the Reorganized Debtor by the Released Party in exchange for the Equity Purchase Price.

42.     **Equity Purchase Price** shall mean the amount of one hundred thousand dollars ($100,000).

43.     **Estate** means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

44.     **Executory Contract** means every unexpired lease to which the Debtor is a party, and every other contract that is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365, pursuant to the Plan or pursuant to separate motion.

45.     **Final Decree** means the Bankruptcy Court's final decree pursuant to Bankruptcy Code § 350(a) and Bankruptcy Rules 3022 and 5009 closing the Bankruptcy Cases after the Estate has been fully administered.

46.     **Final Distribution** means the final Distribution to the Holders of Allowed Claims after all Causes of Action have been liquidated and converted to Cash or abandoned.

47.     **Final Distribution Date** shall mean the date as soon as practicable after the last to occur of: (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

48.     **Final Order** means an Order or judgment of the Bankruptcy Court that is no longer subject to appeal or *certiorari* proceedings and as to which no appeal or *certiorari* proceeding is pending.

49.     **Forbearance Agreement** shall mean the Forbearance Agreement entered into between the Debtor and Ryder on March 30, 2020 allowing the Debtor to maintain possession of the

leased vehicles while acknowledging both a default of $2,976,186.89 and a reservation of Ryder's right under the Lease Agreement.

50.    **Holder** means the holder of a Claim or Interest, as applicable.

51.    **Iberia** shall mean IberiaBank.

52.    **Impaired Class** means any Class whose members are Holders of Claims or Interests that are impaired within the meaning of Bankruptcy Code § 1124 .

53.    **Insider** means "insider" as defined in Bankruptcy Code § 101(31).

54.    **Interest** means an issued or authorized outstanding membership interest, a warrant or warrants for the issuance of such membership interests, or any other equity instruments in the Debtor.

55.    **Key** means Key Equipment Finance.

56.    **Lease Agreement** shall mean that Truck Lease and Service Agreement for the lease and maintenance of commercial vehicles entered into between the Debtor and Ryder on March 12, 2015 and subsequently terminated on October 1, 2019.

57.    **Lien** means any mortgage, lien, charge, security interest, encumbrance, or other security device of like kind affecting any asset or property of the Debtor, but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtor or any other party with standing to bring such a challenge.

58.    **Liquidating Agent** shall mean the person or entity who is in charge of the Liquidating Trust and who will manage and control the Trust Assets on the Effective Date of the Plan. In addition to the powers noted herein, Liquidating Agent shall have all the powers and authority of a trustee under applicable Florida law and will be a fiduciary to the Estate and its creditors having the authority to pursue any causes of action which belong to the bankruptcy estate

for potential disbursement to holders of Allowed Class 10 Claims. The Liquidating Agent will be selected by the Creditors Committee which shall file a notice of such person's contact information at least 10 days prior to the Confirmation Hearing.

59.     **Liquidating Trust** shall mean the Liquidating Trust to be established on the Effective Date for purposes of *pro rata* distributions to Holders of Allowed Class 10 Claims.

60.     **Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

61.     **Person** means "person" as defined in Bankruptcy Code § 101(41).

62.     **Personal Property** means all tangible personal property of the Debtor.

63.     **Petition Date** means May 12, 2020, the date on which Debtor filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

64.     **Plan** means this Chapter 11 Plan of Reorganization, in accordance with the terms hereof or in accordance with the Bankruptcy Code.

65.     **Plan Payments** means payments made by the Debtor pursuant to the terms of the Plan.

66.     **Prepetition** means the period of time preceding the Petition Date and concluding on the Petition Date.

67.     **Priority Claim** means an Unsecured Claim, other than an Administrative Claim, to the extent such Unsecured Claim is entitled to priority in payment under Bankruptcy Code § 507.

68.     **Priority Tax Claim** means every Unsecured Claim or portion thereof that is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

69.    **Priority Unsecured Claim** means every Unsecured Claim or portion thereof that is not an Administrative Claim or a Priority Tax Claim, and that is entitled to priority under any applicable provision of Bankruptcy Code § 507.

70.    *Pro Rata* means proportionate, and when applied to a Claim means the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of consideration distributed on account of all Allowed Claims in such Class.

71.    **Professional** means: (i) any professional retained by the Debtor in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327 or 1103; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Bankruptcy Code § 503(b); and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Bankruptcy Code § 1129(a)(4).

72.    **Professional Fees** means the Administrative Claims for compensation and reimbursement submitted pursuant to Bankruptcy Code §§ 328, 330, 331, or 503(b) of Professionals (i) employed pursuant to an order of the Bankruptcy Court under Bankruptcy Code §§ 327 or 328; or (ii) for whom compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code § 503(b) or by other Final Order.

73.    **Projections** means the Debtor's financial projections which will be filed and served at least two (2) weeks prior to the Plan voting deadline.

74.    **Proof of Claim** means the form filed in the Bankruptcy Court by a Creditor on which the specifics of a Claim are set forth as required by the Bankruptcy Code and the Bankruptcy Rules.

75.    **Property of the Estate** means "property of the estate" as defined in Bankruptcy Code § 541.

76.    **Property Tax Administrative Claim** means every Claim of any state or local governmental unit that is an Administrative Claim for unpaid property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.  Allowed Property Tax Administrative Claims will be classified and paid under the Plan as the Plan provides for Administrative Claims.

77.    **Red Rock** means Red Rock LTO Units.

78.    **Released Party shall mean Mr. Dilshod Mikhmanov.**

79.    **Reorganized Debtor** refers to the Debtor upon the Effective Date of the Plan.

80.    **RTS** shall mean RTS Financial Services, Inc.

81.    **Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

82.    **Ryder** means Ryder Truck Rental, Inc.

83.    **Schedules** means the schedules of assets and liabilities and any amendments thereto filed by the Debtor with the Bankruptcy Court in accordance with Bankruptcy Code § 521(1).

84.    **Secured Claim** means a Claim secured by a Lien against the Debtor's Assets, or any part thereof, to the extent of the value of any interest in such Assets securing such Claim, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or to the extent of the amount of such Claim subject to setoff in accordance with Bankruptcy Code § 553, in either case as determined pursuant to Bankruptcy Code § 506(a).

85.    **Secured Tax Claim** means a Claim secured by a statutory lien on Assets for unpaid taxes on such Assets.

86.    **Security Interest** means "security interest" as defined in Bankruptcy Code § 101(51).

87.     **Signature** means Signature Finance.

88.     **Sterling** means Sterling National Bank.

89.     **TCF** means TCF Equipment Finance.

90.     **Unclaimed Property** shall mean any cash, or any other property of the Debtor unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

91.     **Unimpaired Class** means any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of Bankruptcy Code § 1124.

92.     **Unsecured Claim** means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

93.     **United States Trustee** shall have the meaning ascribed to it in 28 U.S.C. § 581, *et. seq*. and, as used in the Plan, means the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims treated under Articles II of the Plan are divided into the following classes, which shall be mutually exclusive:

A.      Secured Claims.

1.      Class 1 – Secured Claim of Ryder Truck Rental, Inc. - Class 1 consists of the Allowed Secured Claim of Ryder. Class 1 is Impaired.

2.      Class 2 – Secured Claim of Bank of America Leasing and Capital, LLC. Class 2 consists of the Allowed Secured Claim of Bank of America. Class 2 is Impaired.

3.      Class 3 – Secured Claim of Signature Finance. Class 3 consists of the Allowed Secured Claim of Signature. Class 3 is Impaired.

      4.     <u>Class 4 – Secured Claim of Red Rock LTO Units</u>. Class 4 consists of the Allowed Secured Claim of Red Rock. Class 4 is being removed from the Plan as discussed *supra*.

      5.     <u>Class 5 – Secured Claim of Daimler Truck Financial</u>. Class 5 consists of the Allowed Secured Claim of Daimler. Class 5 is Impaired.

      6.     <u>Class 6 – Secured Claim of BMO Financial</u>. Class 6 consists of the Allowed Secured Claim of BMO. Class 6 is Impaired.

      7.     <u>Class 7 – Secured Claim of Sterling National Bank</u>. Class 7 consists of the Allowed Secured Claim of Sterling. Class 7 is Impaired.

      8.     <u>Class 8 – Secured Claim of Key Equipment Finance</u>. Class 8 consists of the Allowed Secured Claim of Key. Class 8 is Impaired.

      9.     <u>Class 9 – Secured Claim of TCF Equipment Finance</u>. Class 9 consists of the Allowed Secured Claim of TCF. Class 9 is Impaired.

      10.     <u>Class 12 – Secured Claim of RTS Financial Services, Inc</u>. Class 12 consists of the Allowed Secured Claim of RTS. Class 12 is Impaired.

      11.     <u>Class 13 – Secured Claim of IberiaBank</u>. Class 13 consist of the Allowed Secured Claim of Iberia. Class 13 is Impaired.

      12.     <u>Class 14 – Secured Claim of CenterState Bank, National Association</u>. Class 14 consists of the Allowed Secured Claim of CenterState. Class 14 is Impaired.

    B.     <u>Unsecured Claims</u>.

      1.     <u>Class 10 – Allowed General Unsecured Claims</u>.  Class 10 consists of all Allowed General Unsecured Claims.  Class 10 is Impaired.

    C.     <u>Equity Interests</u>.

1.      <u>Class 11 – Equity Ownership Interests in the Debtor</u>. Class 11 consists of any and all ownership interests currently issued or authorized in the Debtor.  Class 11 is Impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES, PRIORITY CLAIMS AND U.S. TRUSTEE FEES.

A.      <u>Administrative Expense Claims</u>.

In full and final satisfaction, settlement, release and discharge of each Allowed Administrative Claim, Holders of an Allowed Administrative Expense Claim shall be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. The Allowed Administrative Claims shall be paid from the Equity Purchase and Debtor's funds available and operational revenue. Debtor estimates Administrative Claims to be approximately $550,000, after deducting pre-petition and post-petition retainers.

B.      <u>Priority Claims</u>.

1.      <u>Allowed Priority Tax Claims</u>.

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, in full satisfaction of each Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from the Petition Date. Each Allowed Priority Tax Claim will accrue interest at five percent (5.00%); the payments will be made quarterly. Payments will commence on the later of the Effective Date, or on such dates as a respective Priority Claim becomes Allowed.  One Priority Tax Claims have been filed in the amount of $75.00.

2.      Allowed Priority Claims (Non-Tax).

Except to the extent that the Holder and the Debtor have agreed or may agree to different treatment, in full satisfaction of each Priority Claim (non-tax), exclusive of Priority Tax Claims under 11 U.S.C. § 507(a)(8), each Holder of an Allowed Priority Claim shall receive payment of such Claim in full on the Effective Date or the date on which such Priority Claim becomes Allowed. The source of payment for Priority Claims (non-tax) will be from the Debtor's funds available and operational revenue; however, the current amount of such claims is zero.

C.      United States Trustee Fees.

All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date will be paid when due in the ordinary course from cash on hand.

**ARTICLE IV – TREATMENT OF IMPAIRED & UNIMPAIRED CLASSES.**

There are fourteen (14) Classes of Claims and Interests that are Impaired. Treatment for these classes is as follows:

A.      Secured Claims.

1.      Class 1 – Secured Claim of Ryder Truck Rental, Inc. - Class 1 consists of the Allowed Secured Claim of Ryder Truck Rental, Inc., ("Ryder"). Per the Ryder Agreement, Ryder shall have an Allowed Claim of $3,000,000.00. In full satisfaction of the Allowed Class 1 Claim, Ryder will receive weekly payments of $125,000.00 for twenty-four (24) weeks. In addition, Reorganized Debtor will remain current on all post-confirmation payments and a default under either the Plan or post-confirmation payments will be a default under all obligations and entitle Ryder to immediate return of its collateral plus other remedies available at law or equity. Upon payment in

full of the Plan Payments, the Forbearance Agreement will be deemed void and the original Lease

Agreement will be deemed reinstated. Class 1 is Impaired.

2.    <u>Class 2 Secured Claim of Bank of America Leasing and Capital, LLC.</u> Class 2

consists of the Allowed Secured Claim of Bank of America Leasing and Capital, LLC, ("Bank of

America"). Bank of America will be deemed to have an Allowed Secured Claim of $1,700,000.00.

All other amounts owed to Bank of America as of Petition Date will be deemed an Allowed

Unsecured Claim. In full satisfaction of the Allowed Class 2 Claim, Bank of America will retain its

liens and receive monthly payments.  The principal amount of the Class 2 Claim will be paid over

sixty (60) months at four and a half percent interest (4.5%).  Monthly payments will be $26,596.81.

Class 2 is Impaired.

3.    <u>Class 3 – Secured Claim of Signature Finance.</u> Class 3 consist of the Allowed

Secured Claim of Signature Finance, ("Signature"). In full satisfaction of the Allowed Class 3 Claim,

Signature will retain its liens and receive monthly payments. Signature will be deemed to have an

Allowed Secured Claim of $1,700,000.00.  All other amounts owed to Signature as of Petition Date

will be deemed an Allowed Unsecured Claim. The principal amount of the Class 3 Claim will be

paid over seventy-two (72) months at five and three-fifths percent interest (5.6%).  Monthly

payments will be $27,854.00. Class 3 is Impaired.

4.    <u>Class 4 – Secured Claim of Red Rock LTO Units.</u> Class 4 is removed from the

Plan.  Debtor and Red Rock have agreed its documents constitute a true lease, and Debtor is filing a

motion to assume with six (6) months to cure from lease assumption.  Red Rock will not be entitled

to a vote on the Plan.

5.    <u>Class 5 – Secured Claim of Daimler Truck Financial.</u> Class 5 consists of the

Allowed Secured Claim of Daimler Truck Financial, ("Daimler"). In full satisfaction of the Allowed

Class 5 Claim, Daimler will retain its liens and receive monthly payments. Debtor believes the principal balance as of the Petition Date was $254,000 and that the value of the collateral is substantially lower. The monthly payments will be based on a value to be agreed by the parties or, failing an agreement, to be determined by Court Order.  The principal amount of the Class 5 Claim will be paid over sixty (60) months at four percent interest (4%).  Class 5 is Impaired.

6.    Class 6 – Secured Claim of BMO Financial. Class 6 consists of the Allowed Secured Claim of BMO Financial, ("BMO"). In full satisfaction of the Allowed Class 6 Claim, BMO will retain its liens and receive monthly payments. BMO will be deemed to have an Allowed Secured Claim of $1,150,000.00.   All other amounts owed to BMO as of Petition Date will be deemed an Allowed Unsecured Claim. The principal amount of the Class 6 Claim will be paid over sixty-six (66) months at five and thirteen-twentieths percent interest (5.65%). Monthly payments will be $19,444.00 with a balloon payment of $14,062.21 to be made along with the final monthly payment. Class 6 is Impaired.

7.    Class 7 – Secured Claim of Sterling National Bank. Class 7 consists of the Allowed Secured Claim of Sterling National Bank, ("Sterling"). In full satisfaction of the Allowed Class 7 Claim, Sterling will retain its liens and receive monthly payments. Sterling will be deemed to have an Allowed Secured Claim of $800,000. All other amounts owed to Sterling as of the Petition Date will be deemed an Allowed Unsecured Claim. The principal amount of the Class 7 Claim will be paid over sixty (60) months at four and one-half percent interest (4.5%). Monthly payments will be $14,914.42  Class 7 is Impaired.

8.    Class 8 – Secured Claim of Key Equipment Finance. Class 8 consists of the Allowed Secured Claim of Key Equipment Finance, ("Key"). In full satisfaction of the Allowed Class 8 Claim, Key will retain its liens and receive monthly payments. Key will be deemed to have

an Allowed Secured Claim of $800,000. All other amounts owed to Key as of the Petition Date will be deemed an Allowed Unsecured Claim. The principal amount of the Class 8 Claim will be paid over sixty (60) months at five and three-fifths percent interest (5.6%). Monthly payments will be $15,317.  Class 8 is Impaired.

9.      Class 9 – Secured Claim of TCF Equipment Finance. Class 9 consists of the Allowed Secured Claim of TCF Equipment Finance, ("TCF"). In full satisfaction of the Allowed Class 9 Claim, TCF will retain its liens and receive monthly payments.  TCF will be deemed to have an Allowed Secured Claim of $350,000.  All other amounts owed to TCF as of Petition Date will be deemed an Allowed Unsecured Claim. The principal amount of the Class 9 Claim will be paid over seventy-two (72) months at four percent interest (4%).  Monthly payments will be $5,475.81.  Class 9 is Impaired.

10.      Class 12 – Secured Claim of RTS Financial Services, Inc. Class 12 consists of the Allowed Secured Claim of RTS. In full satisfaction of the Allowed Class 12 Claim, RTS will retain its liens and receive monthly payments. On account of the pre-petition, Allowed Secured Claim held by RTS, and the post-petition, allowed super-priority administrative expense claim held by RTS, RTS and the Reorganized Debtor will continue to be bound by the terms of the existing, post-petition Factoring Agreement dated May 14, 2020, whereby, among other things, RTS will continue to advance funds to purchase the Reorganized Debtor's accounts receivable in accordance with the terms of the Factoring Agreement.  Class 12 is Impaired.

11.      Class 13 – Secured Claim of IberiaBank. IBERIABANK ("Iberia") has filed a proof of claim in the amount of $2,649,556.31, asserting that it is secured as to $12,000.00 relating to FF&E located at the Debtor's place of business, and unsecured as to $2,637,556.31 (the "Iberia Claim"). Pursuant to a Security Agreement dated December 14, 2018 (the "Iberia Security

Agreement") and UCC-1, Iberia has a perfected "all assets" security interest in all of the Debtor's personal property, the priority of which is determined pursuant to the agreements Iberia has with other secured creditors and applicable law.  Pursuant to the Iberia Security Agreement, Iberia also has a perfected security interest in all assets owned by non-debtor DM World Logistics, LLC ("DM Logistics"). Iberia also has a perfected first-position mortgage on real property, personal property and fixtures (the "DAN Collateral") owned by a non-debtor affiliate of the Debtor, DAN Realty Group, LLC ("Dan Realty"). Notwithstanding Iberia's perfected security interest in the Debtor's assets, pursuant to an agreement between Iberia and the Debtor, the Iberia Claim shall be treated as a general unsecured claim in this case. Provided, however, the treatment of the Iberia Claim as unsecured for the purposes of this Plan shall not be deemed to make Iberia's security interest in the Debtor's assets, DM Logistics' assets, and/or in the DAN Collateral unsecured for any other purpose. Iberia's perfected security interest in the Debtor's assets, DM Logistics' assets, and/or the DAN Collateral shall be unaffected by this bankruptcy case, the Plan, and any confirmation order entered with respect to the Plan. Class 13 is Impaired.

12.    Class 14 – Secured Claim of CenterState Bank, National Association. CenterState Bank ("CenterState") has filed a proof of claim in the amount of $1,559,350.00, asserting that it is secured as to certain FF&E located at the Debtor's place of business, but due to valuation, the claim is wholly unsecured (the "CenterState Claim"). Pursuant to a Mortgage dated May 16, 2019 (the "CenterState Security Agreement") and UCC-1, CenterState has a perfected "all assets" security interest in all of the Debtor's personal property, the priority of which is determined pursuant to the agreements CenterState has with other secured creditors and applicable law. Pursuant to the CenterState Agreement, CenterState also has a perfected first-position mortgage on real property, personal property and fixtures (the "DAN Collateral") owned by a non-debtor affiliate

of the Debtor, DAN Realty Group, LLC ("Dan Realty"). Notwithstanding CenterState's perfected security interest in the Debtor's assets, pursuant to an agreement between CenterState and the Debtor, the CenterState Claim shall be treated as a general unsecured claim in this case. Provided, however, the treatment of the CenterState Claim as unsecured for the purposes of this Plan shall not be deemed to make CenterState's security interest in the Debtor's assets and/or in the DAN Collateral unsecured for any other purpose. CenterState's perfected security interest in the Debtor's assets, and/or the DAN Collateral shall be unaffected by this bankruptcy case, the Plan, and any confirmation order entered with respect to the Plan. Class 14 is Impaired.

B.    <u>Unsecured Claims</u>.

<u>Class 10 – Allowed General Unsecured Claims.</u>  Class 10 consists of all Allowed General Unsecured Claims. The Class will include the deficiency claims related to Classes 1 through 9 and Classes 13 and 14.  In full satisfaction of the Allowed Class 10 Claims, holders of such claims shall receive a *pro rata* distribution from the Liquidating Trust (as directed by the Liquidating Agent), as more fully discussed below. In the event of a conversion and liquidation, there would be no distribution to Holders of Allowed Class 10 Claims as the debt encumbering Debtor's assets far exceeds the value of such assets. Class 10 is Impaired.

C.    <u>Equity Interests</u>.

<u>Class 11 – Equity Ownership Interests in the Debtor</u>. Class 11 consists of any and all ownership interests currently issued or authorized in the Debtor. On the Effective Date, all existing Interests shall be extinguished and vested in the Released Party in exchange for the Equity Purchase. To the extent Class 10 does not vote in favor of the Plan, the Equity Interests will be offered for sale and subject to bids higher than the Equity Purchase Price.  Reorganized Debtor will work with the Committee to determine sale and marketing terms if the equity sale is required. Class 11 is Impaired.

**ARTICLE V – UNEXPIRED LEASES AND EXECUTORY CONTRACTS**.

      A.      <u>Leases and Executory Contracts</u>.

To the extent Debtor rejects any executory contracts or unexpired leases prior to the hearing on Confirmation, any party asserting a Claim, pursuant to § 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 10 Claim. The Debtor shall have through and including the hearing on Confirmation within which to file a motion to assume or reject any unexpired lease or executory contract. To the extent the Debtor does not file a motion to assume prior to Confirmation, any such lease will be deemed rejected with the rejection claim included in Class 10.

**ARTICLE VI – MEANS OF IMPLEMENTATION**.

      A.      <u>Business Operations and Cash Flow</u>.

The Plan contemplates that the Debtor will continue to operate with reduced operating expenses and lower debt service requirements due to the valuation of assets to the current value and, thus, lower monthly required payments on the Secured Claims. The Debtor believes the cash flow generated from operations following the restructuring of debt will be sufficient to make all Plan Payments and will be sufficient to pay ordinary course expenses, including but not limited to, payroll and administrative costs.

      B.      <u>Equity Purchase and Notice Under FRBP 2002 (c)(3)</u>.

On the Effective Date, assuming Class 10 votes in favor of the Plan, the Equity Interest will be issued to the Released Party in exchange for the Equity Purchase Price. The funds for the Equity Purchase Price are held in escrow with Debtor's counsel. **In addition to the equity in the Reorganized Debtor, confirmation of the Plan and consummation of the Equity Purchase will**

**also include: (a) a release of Released Party by Debtor in respect of any Causes of Action; and (b) an injunction as to all creditors from pursuing any guaranty claim against Released Party for so long as Reorganized Debtor performs under the Plan.  Any statute of limitation will be tolled for the life of the injunction.**

        C.      <u>Funds Generated During Chapter 11</u>.

Funds generated from operations through the Effective Date will be used for Plan Payments; however, the Equity Purchase Price and Debtor's cash on hand as of Confirmation will be available for payment of Administrative Expenses.

        D.      <u>Liquidating Agent</u>.

The Liquidating Agent shall be the person or entity who is in charge of the Liquidating Trust and who will manage and control the Trust Assets on the Effective Date of the Plan. In addition to the powers noted herein, the Liquidating Agent shall have all the powers and authority of a trustee under applicable Florida law and will be a fiduciary to the Estate and its creditors having the authority to pursue any causes of action which belong to the bankruptcy estate for potential disbursement to holders of Allowed Class 10 Claims.   The Liquidating Agent will be selected by the Creditors Committee which shall file a notice of such person's contact information at least 10 days prior to the Confirmation Hearing.

        E.      <u>Disbursing Agent</u>.

The Reorganized Debtor will serve as the Disbursing Agents for all Distributions (except Class 10) to be made under the Plan. In addition, the Reorganized Debtor will oversee and direct all claim objections and all other actions required to be taken under the Plan, the Bankruptcy Code, or by order of the Bankruptcy Court.

F.      Management and Control of the Reorganized Debtor.

The operations of the Reorganized Debtor will continue to be overseen by the current manager following Confirmation, who will have uninterrupted authorization to manage the day-to-day normal business operations of the Reorganized Debtor with all the powers and duties of a manager as set forth in the Debtor's operating agreements.

G.      Other Provisions.

        1.      Procedures For Resolving Disputed Claims.

                a.      Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtor shall have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date shall be finished by the Reorganized Debtor.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order, or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the commencement of the Bankruptcy Cases against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan.  Except as set forth in the Plan, upon Confirmation the Debtor shall have, retain, reserve and be entitled to assert all such

25

claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.     Estimation of Claims.

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim pursuant to § 502(c) of the Code, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.     Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objections, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim, or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, distributions, and voting under the Plan.

d.      <u>Payments and Distributions on Disputed Claims</u>.

As and when authorized by a Final Order, Disputed Claims or Interests that become "Allowed" shall be paid by the Reorganized Debtor such that the Holder of such Allowed Claim or Interest receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim or Interest until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor or Equity Interest Holder who holds both an Allowed Claim and a Disputed Claim or Interest will not receive a distribution until such dispute is resolved by settlement or Final Order.

e.      <u>Allowance of Claims and Interests</u>.

(i)      <u>Disallowance of Claims</u>.

According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under §§ 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code shall be deemed disallowed pursuant to § 502(d) of the Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor, and the Reorganized Debtor when appropriate, shall have the exclusive right and authority to bring any causes of action under Chapter 5 of the Bankruptcy Code.

(ii)     <u>Allowance of Claims</u>.

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

f.     <u>Controversy Concerning Impairment</u>.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan shall govern.

## **ARTICLE VII – MISCELLANEOUS**.

A.     <u>Authority to Effectuate the Plan</u>.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided for under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.  Unless otherwise noted herein, Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

B.     <u>Post-Confirmation Status Report</u>.

Within 90 days of the entry of the Confirmation Order, the Reorganized Debtor will file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report will be served on the United States Trustee,

and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

C.    <u>Conditions to Effectiveness</u>.

The Effective Date shall not occur until: (i) the entry of the Confirmation Order by the Bankruptcy Court; (ii) the expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such order; and (iii) the Debtor files a notice of Effective Date with the Bankruptcy Court, which shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 15th day after the entry of the Confirmation Order provided that the notice called for under the Plan has been filed by the Debtor.

D.    <u>Exculpation from Liability</u>.

The Debtor, and their officers, directors, members, managers, managing members and Professionals (acting in such capacity) shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.  The rights

granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION. MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED;** *PROVIDED THAT*, **THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members, managers or executive officers shall not be relieved or released from any personal contractual liability except as otherwise provided in the Plan.

F.    Police Power.

Nothing in this Article VIII shall be deemed to effect, impair, or restrict any federal or state governmental unit from pursuing its police or regulatory enforcement action against any person or entity, other than to recover monetary claims against the Debtor for any act, omission, or event

occurring prior to Confirmation Date to the extent such monetary claims are discharged pursuant to § 1141 of the Code.

      G.    <u>Revocation and Withdrawal of this Plan</u>.

      The Debtor reserve the right to withdraw this Plan and Disclosure Statement at any time before entry of the Confirmation Order.  If (i) the Debtor revokes and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

      H.    <u>Modification of Plan</u>.

      The Debtor may seek to amend or modify this Disclosure Statement and the Plan in accordance with § 1127(b) of the Code to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

      On or before substantial consummation of the Plan, the Debtor may issue, execute, deliver, or file with the Bankruptcy Court, or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

      H.    <u>Retention of Jurisdiction</u>.

      After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to them herein without approval of the Bankruptcy Court, except as specifically set forth herein. The itemization below is in no way meant to limit, restrict, or circumscribe the inherent jurisdictional authority of the Bankruptcy Court.  Confirmation of the Plan acts as consent of the parties to agree to the Bankruptcy Court's ability to enter binding final judgments and rulings as the

Bankruptcy Court will continue to retain jurisdiction in this Bankruptcy Case to determine or take the following actions:

1.      All objections to the allowance of Claims and Interests and the compromise of Claims;

2.      All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; provided, however, that fees of professionals for services rendered after the Effective Date may be paid by the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business without a Bankruptcy Court order; provided, further, however, in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.      Any adversary proceedings or contested matters brought by the Debtor, the Reorganized Debtor, or the Liquidating Agent,  the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§ 544, 545, 547, 548, 549, and 550 of the Code, or other proceedings calculated to generate payments to Holders of Allowed Claims;

4.      All controversies and disputes arising under or in connection with the Plan;

5.      The enforcement and interpretation of the provisions of the Plan;

6.      To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.      Any motion to modify the Plan in accordance with Code § 1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.      All Claims arising from the rejection of any executory contract or lease;

9.      Such other matters as may be provided for in the Code or the Plan;

10.     To protect the Property of the Estate from adverse claims or interference inconsistent with the Plan;

11.     To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement; and

12.     To hear and determine any action or controversy by or against the Reorganized Debtor.

I.      <u>Headings</u>.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

J.      <u>Cramdown</u>.

The Debtor reserve the right to seek confirmation of this Plan under § 1129(b) of the Code.

K.      <u>Discharge</u>.

As of the Effective Date and pursuant to § 1141 of the Code, Debtor shall be discharged from any debt that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h) and 502(i) of the Code, whether or not:

1.      A proof of claim based upon such debt is filed or deemed filed under § 501 of the Code;

2.      A Claim based upon such debt is allowed under § 502 of the Code; or

      3.     The Holder of a Claim or Interest based upon such debt has accepted the

Plan.

L.    <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing

and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the

following:


<u>Counsel for the Debtor</u>:

R. Scott Shuker, Esquire
Shuker & Dorris, P.A.
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801

<u>Debtor</u>:

DM World Transportation, LLC.
Attn:  Beck Tokhtaev
450 South Ronald Reagan Blvd.
Longwood, Florida 32750

<u>United States Trustee</u>:

George C. Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

<u>Counsel for the Official Committee of Unsecured Creditors</u>

John B. Hutton, Esq.
Greenberg Traurig, P.A.
333 S.E. Second Avenue
Miami, Florida 33131

M.    Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

N.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making Distributions shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

O.    Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made.  Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be

distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy Rule 3001(e), or (v) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

       P.      <u>Distribution of Unclaimed Property</u>.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan that is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution, together with all interest earned thereon, shall become an Asset to be distributed and conveyed to Holders of Allowed Claims in accordance with the provisions of this Plan.  However, checks issued by the Reorganized Debtor with respect to Allowed Claims will be null and void if not cashed within sixty days of the date of issuance and revest in the Reorganized Debtor. Requests for re-issuance of any such check shall be made in writing to the Reorganized Debtor.

       Q.      <u>Transfer Taxes</u>.

Under § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

       **RESPECTFULLY SUBMITTED** this 25th day of August 2020.

                    /s/ R. Scott Shuker
                    R. Scott Shuker, Esq.

Florida Bar No. 0984469
rshuker@shukerdorris.com
Mariane A. Dorris, Esq.
Florida Bar No. 173665
mdorris@shukerdorris.com
John B. Dorris, Esq.
Florida Bar No. 0093744
jdorris@shukerdorris.com
SHUKER & DORRIS, P.A.
121 S. Orange Avenue, Suite 1120
Orlando, Florida 32801
Tel: 407-337-2060
Fax: 407-337-2050
*Attorneys for the Debtor*