ORDERED.

**Dated:  September 16, 2020**

_____

Lori V. Vaughan
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                              **CASE NO.: 6:20-bk-02684-LVV**

**DM WORLD TRANSPORTATION LLC,**
                                                           **CHAPTER 11**
               Debtor.

_____/

**ORDER APPROVING DISCLOSURE STATEMENT AND CONFIRMING**
**PLAN OF REORGANIZATION, AS MODIFIED, SUBMITTED BY**
**DM WORLD TRANSPORTATION LLC**

        **THIS CASE** came on for hearing on September 9, 2020 ("Hearing") to consider approval

of:   the Disclosure Statement Pursuant to 11 U.S.C. § 1125   (the "Disclosure Statement") (Doc.

No. 107) submitted by **DM WORLD TRANSPORTATION LLC** (the "Debtor"); the Debtor's

Amended Plan of Reorganization (the "Plan") (Doc. No. 153); the First and Second Modifications

to the Plan (the "Modifications") (Doc. Nos. 163 and 182); (the Plan, as modified by the

Modifications, is collectively referred to as the "Plan"); the Objection to the Plan and Disclosure

Statement (the "Objection") (Doc. No. 171) filed by the Official Committee of Unsecured

Creditors, ("Committee"); the joinder to the Objection (the "Joinder") (Doc. No. 172) filed by

Premier Trailer Leasing, Inc. (the Objection and Joinder are collectively referred to as the "Plan Objections"); the Confirmation Affidavit (Doc 178); and the Ballot Tabulation (Doc No. 173). The Plan and Disclosure Statement were timely transmitted to all creditors and interested holders.

Pursuant to Local Rule 3020-1, the filed Modifications to the Plan are as follows:

## ARTICLE I – DEFINITIONS

42.    **Equity Purchase Price** shall mean the amount of one hundred and twenty-five thousand dollars ($125,000).

58.    **Liquidating Agent** shall mean the person or entity who is in charge of the Liquidating Trust and who will manage and control the Trust Assets on the Effective Date of the Plan. In addition to the powers noted herein, Liquidating Agent shall have all the powers and authority of a trustee under applicable Florida law and as set forth in the Liquidating Trust Agreement to be entered into between the Liquidating Agent and the Debtor, in form and substance acceptable to the Committee (the "Liquidating Trust Agreement").    The Liquidating Trust will be a fiduciary to the Estate and its unsecured creditors (and the Liquidating Trust and its beneficiaries) having the full power and authority to administer all Claims against the Estate (other than those claim objections commenced as of the confirmation date) and pursue any Causes of Action    for the benefit of holders of Allowed Class 10 Claims. The Liquidating Agent will be selected by the Creditors Committee which shall file a notice of such person's contact information, along with a copy of the Liquidating Trust Agreement, on or prior to September 16, 2020.

59.    **Liquidating Trust** shall mean the Liquidating Trust to be established on the Effective Date for purposes of pro rata distributions to Holders of Allowed Class 10 Claims.

60.    **Signature** shall mean Signature Financial LLC.

2

94.     **Trust Assets** shall mean any and all assets transferred to and/or held by the Liquidating Trust, including all Causes of Action and all cash paid by the Reorganized Debtor.

## ARTICLE II A.1

1.      <u>Class 1 – Claim of Ryder Truck Rental, Inc.</u> – Class 1 consist of the Allowed Claim of Ryder. Class 1 is Impaired.

## ARTICLE II A.3

2.      Class 3 – Secured Claim of Signature Financial LLC, Class 3 consists of the Allowed Secured Claim of Signature.   Class 3 is Impaired.

## ARTICLE IV – TREATMENT OF IMPAIRED & UNIMPAIRED CLASSES

*Article IV, Section A, shall be amended, and the terms specified therein shall be modified to read as follows*:

A.      <u>Secured Claims.</u>

1.      <u>Class 1 – Claim of Ryder Truck Rental, Inc.</u> – Class 1 consists of an Allowed Claim of Ryder Truck Rental, Inc., ("Ryder"). Per the Ryder Agreement, Ryder shall have an Allowed Claim of $3,000,000.00. The Allowed Claim consists of prepetition lease payments due Ryder under a commercial Truck Lease and Service Agreement for the lease and use of vehicles that are owned by Ryder. Ryder has provided Reorganized Debtor with a substantial discount on the accrued interest on the prepetition balance. The continued use of the vehicles is essential to the Reorganized Debtor's ability to continue operating the business and to reorganize. The payment of the prepetition lease payments is a condition to the Reorganized Debtor being permitted to continue leasing the vehicles. In full satisfaction of the Allowed Class 1 Claim, Ryder will receive weekly payments of $125,000.00 for twenty-four (24) weeks. In addition, Reorganized Debtor will remain current on all post-confirmation payments and a default under either the Plan

3

or post-confirmation payments will be a default under all obligations and entitle Ryder to immediate return of its collateral plus other remedies available at law or equity. Upon payment in full of the Plan Payments, the Reorganized Debtor's obligations under the Forbearance Agreement will be deemed satisfied and the original Lease Agreement will be deemed reinstated.

2.    Class 2 – Secured Claim of Bank of America Leasing and Capital, LLC. Class 2 consists of the Allowed Secured Claim of Bank of America Leasing and Capital, LLC, ("Bank of America"). Bank of America will be deemed to have an Allowed Secured Claim of $1,700,000.00.   All other amounts owed to Bank of America as of Petition Date will be deemed an Allowed Unsecured Claim. In full satisfaction of the Allowed Class 2 Claim, Bank of America will retain its liens and receive monthly payments.   The principal amount of the Class 2 Claim will be paid over seventy-two (72) months at four and a half percent interest (4.5%).   Monthly payments will be $26,596.81.   Class 2 is Impaired.

3.    Class 3 – Secured Claim of Signature Financial LLC. Class 3 consist of the Allowed Secured Claim of Signature Financial LLC ("Signature"). In full satisfaction of the Allowed Class 3 Claim, Signature will retain its liens and receive monthly payments. Signature will be deemed to have an Allowed Secured Claim of $1,700,000.00 and an Allowed Unsecured Claim of $289,383.89.   The principal amount of Signature's Allowed Secured Claim will be paid over seventy-two (72) months with interest thereon at 5.6%. Monthly payments on Signature's Allowed Secured Claim will be $27,854.00 (each a "Monthly Payment"). Signature shall retain its first priority perfected Security Interests and Liens against all of the Collateral[1].   The the Loan Documents[2] (as modified by the previous 6 sentences) shall remain in full force and effect and

---

[1]  As that term is defined in that certain Joint Motion of DM World Transportation LLC and Signature Financial LLC for Approval of Agreement Regarding Adequate Protection and Plan Terms (Docket No. 151 filed on August 24, 2020 (the "Signature Motion").
[2]  As that term is defined in the Signature Motion.

binding upon the Debtor.   Signature shall retain all of its rights and remedies under the Loan Documents.   The Debtor, the Estate, the Reorganized Debtor and the Liquidating Agent each release, waive and forever discharge any and all Causes of Action against Signature. Should Debtor fail to timely make any Monthly Payment or otherwise fail to comply with the terms of the Loan Documents (i.e. failure to maintain insurance as required) (each a "Breach"), then Signature shall have the right to repossess the Collateral upon three (3) business days-notice and to exercise any and all rights and remedies under the Loan Documents or under applicable law. Notwithstanding Article VI B (b) of this Plan, Signature shall not be bound by the injunction in favor of the Released Party as set forth in Article VI B (b) of this Plan (the "Injunction"), unless and until the Released Party enters into a settlement agreement with Signature and a stipulated judgment in favor of Signature in the amount of $1,989,383.89, each in form and substance satisfactory to Signature.   Any statutes of limitation with respect to the Released Party's obligations to Signature will be tolled for the life of the Injunction.   For the avoidance of doubt, the Injunction shall be automatically dissolved against Signature upon the occurrence of a Breach. The stipulated judgment to be executed by the Released Party in favor of Signature shall provide that the amount of any judgement to be entered thereon will be reduced by any post-confirmation payments made by Debtor and received by Signature.   Signature's Allowed Unsecured Claim shall receive the treatment set forth in Class 10-Allowed General Unsecured Claims of this Plan. Class 3 is Impaired.

      5.    <u>Class 5 — Secured Claim of Daimler Truck Financial.</u>[3] — Class 5 consists of the Allowed Secured Claim of Daimler Truck Financial ("DTF"). In full satisfaction of DTF's Allowed Secured Claim, DTF will retain its liens and receive monthly payments. DTF will be deemed

---

[3] For all purposes under this Plan, Daimler Truck Financial includes Mercedes-Benz Financial Services USA LLC.

to have an Allowed Secured Claim of $225,000.00 and an Allowed Unsecured Claim of $42,714.82. The principal amount of DTF's Allowed Secured Claim will be paid over sixty (60) months with interest at 5.0%. Monthly payments on DTF's Allowed Secured Claim will be $4,246.03 (each a "Monthly Payment"). DTF shall retain its first priority perfected Security Interest and Lien against all collateral pledged to secure the Debtor's obligations and indebtedness to DTF.  The promissory notes, security agreements and related loan documents between DTF and Debtor (the "Loan Documents") are affirmed and ratified by Debtor, and all terms and conditions thereof shall remain fully valid, binding and enforceable, except as expressly modified by the payment terms set forth in the Plan, and DTF shall retain all of its rights and remedies under the Loan Documents. The Debtor, the Estate, the Reorganized Debtor and the Liquidating Agent each release, waive and forever discharge any and all Causes of Action against DTF. Should Debtor fail to timely make any Monthly Payment or otherwise fail to comply with the terms of the Loan Documents (i.e. failure to maintain insurance as required) (each a "Breach"), then DTF shall have the right to repossess its collateral upon three (3) business days-notice and to exercise any and all rights and remedies under the Loan Documents or under applicable law. Any statutes of limitations will be tolled for the life of the Injunction set forth in Article VI B (b) of this Plan as to the Released Party's obligations to DTF. For the avoidance of doubt, the Injunction shall be automatically dissolved as against DTF upon the occurrence of a Breach. DTF's Allowed Unsecured Claim shall receive the treatment set forth in Class 10-Allowed General Unsecured Claims of this Plan.   Class 5 is Impaired.

        9.        <u>Class 9 – Secured Claim of TCF Equipment Finance</u>. Class 9 consists of the Allowed Secured Claim of TCF Equipment Finance, ("TCF"). In full satisfaction of the Allowed Class 9 Claim, TCF will retain its liens and receive monthly payments.   TCF will be deemed to have an Allowed Secured Claim of $365,000.   The promissory notes and security agreement and

related loan documents by and between TCF and Debtor are affirmed and ratified by Debtor, and all terms and conditions thereof shall remain fully valid, binding and enforceable, except as expressly modified by the payment terms set forth in the Plan.   All other amounts owed to TCF as of Petition Date will be deemed an Allowed Unsecured Claim. The principal amount of the Class 9 Claim will be paid over seventy-two (72) months at five and sex-tenths percent interest (5.6%).   Monthly payments will be $5,980.42.   Class 9 is Impaired.

10.    Class 12 – Secured Claim of RTS Financial Services, Inc. Class 12 consists of the Allowed Secured Claim of RTS Financial Services, Inc. ("RTS").   In full satisfaction of the Allowed Class 12 Claim, RTS will retain its liens and receive monthly payments. On account of the pre-petition, Allowed Secured Claim held by RTS, and the post-petition, allowed super-priority administrative expense claim held by RTS, RTS and the Reorganized Debtor will continue to be bound by the terms of the existing, post-petition Factoring Agreement, whereby, among other things, RTS will continue to advance funds to purchase the Reorganized Debtor's accounts receivable in accordance with the terms of the Factoring Agreement (a copy of which is attached as an exhibit to ECF No. 8).   Solely as it applies to RTS and the Class 12 Allowed Secured Claim of RTS, and regardless of whether the Factoring Agreement dated May 11, 2020 between RTS and the Debtor is renewed in accordance with the terms set forth therein, the injunction described in Article VI(B) of the Plan and entered in this Confirmation Order as to personal guaranty claims against Released Party shall automatically terminate on May 10, 2021 and without need for entry of a further order by the Bankruptcy Court.   Class 12 is Impaired.

11.    Class 13 – Secured Claim of IberiaBank.   Class 13 consists of the secured claim of BERIABANK ("Iberia").   Iberia has filed a proof of claim in the amount of $2,649,556.31, asserting that it is secured as to $12,000.00 relating to FF&E located at the Debtor's

place of business, and unsecured as to $2,637,556.31 (the "Iberia Claim"). Pursuant to a Security Agreement dated December 14, 2018 (the "Iberia Security Agreement") and UCC-1, Iberia has a perfected "all assets" security interest in all of the Debtor's personal property, the priority of which is determined pursuant to the agreements Iberia has with other secured creditors and/or applicable law.   Pursuant to the Iberia Security Agreement, Iberia also has a perfected security interest in all assets owned by non-debtor DM World Logistics, LLC ("DM Logistics"). Iberia also has a perfected first-position mortgage on real property, personal property and fixtures (the "DAN Collateral") owned by a non-debtor affiliate of the Debtor, DAN Realty Group, LLC ("Dan Realty"). Notwithstanding Iberia's perfected security interest in the Debtor's assets, pursuant to an agreement between Iberia and the Debtor, the Iberia Claim shall be treated as a general unsecured claim in this case. Provided, however, the treatment of the Iberia Claim as unsecured for the purposes of this Plan shall not be deemed to make Iberia's security interest in the Debtor's assets, DM Logistics' assets, and/or in the DAN Collateral unsecured for any other purpose. Nothing in the Plan shall be deemed to constitute an injunction of any guaranty claim Iberia has against Released Party should any obligor default under the loan identified in the Iberia Claim (the "Iberia Loan"), in which case, Iberia may pursue Released Party with respect to any such guaranty claim. However, so long as there is no event of default under the Iberia Loan other than the filing of the Bankruptcy Case, Iberia agrees to not pursue a guaranty claim against Released Party. Any statute of limitation will be tolled for the life of the injunction as to the Iberia Loan.   Iberia's perfected security interest in the Debtor's assets, DM Logistics' assets, and/or the DAN Collateral shall be unaffected by this bankruptcy case, the Plan, and any confirmation order entered with respect to the Plan. Class 13 is Impaired.

      12.    <u>Class 14 – Secured Claim of CenterState Bank, National Association.</u>

Class 14 consists of the secured claim of CenterState Bank ("CenterState").   CenterState has filed

a proof of claim in the amount of $1,559,350.00, asserting that it is secured as to certain FF&E

located at the Debtor's place of business, but due to valuation, the claim is wholly unsecured (the

"CenterState Claim").   Pursuant to a Mortgage dated May 16, 2019 (the "CenterState Security

Agreement) and UCC-1, CenterState has a perfected "all assets" security interest in all of the

Debtor's personal property, the priority of which is determined pursuant to agreements CenterState

has with other secured creditors and/or applicable law.   Pursuant to the CenterState Agreement,

CenterState also has a perfected first-position mortgage on real property, personal property and

fixtures (the "DAN Collateral") owned by a non-debtor affiliate of the Debtor, DAN Realty Group,

LLC ("Dan Realty"). Notwithstanding CenterState's perfected security interest in the Debtor's

assets, pursuant to an agreement between CenterState and the Debtor, the CenterState claim shall

be treated as a general unsecured claim in this case.   Provided, however, the treatment of the

CenterState Claims as unsecured for the purposes of this Plan shall be deemed to make

CenterState's security interest in the Debtor's assets and/or in the DAN Collateral unsecured for

any other purpose.   CenterState's perfected security interest in the Debtor's assets, and/or the

DAN Collateral shall be unaffected by this bankruptcy case, the Plan, and any confirmation order

entered in respect of the Plan.   Class 14 is Impaired.

      B.    <u>Unsecured Claims</u>.

      1.    <u>Class 10 – Allowed General Unsecured Claims.</u>   Class 10 consists of all

Allowed General Unsecured Claims. The Class will include the deficiency claims related to

Classes 1 through 9 and Classes 13 and 14.   In full satisfaction of the Allowed Class 10 Claims,

holders of such claims shall receive a *pro rata* distribution of Trust Assets, net of expenses, from

the Liquidating Trust (as directed by the Liquidating Agent), as more fully discussed herein. Upon

the Effective Date, all Causes of Action (except those Causes of Action waived or released in the Plan and/or in this Order) will be deemed transferred into the Liquidating Trust.  No Cause of Action against the Released Party may be commenced as long as the Reorganized Debtor is performing under the terms of the Plan in respect of Class 10.  Any statutes of limitations associated with potential Causes of Action against the Released Party shall be tolled for five (5) years.  In addition to contributing the Causes of Action to the Liquidating Trust, the Reorganized Debtor shall also make a one-time payment to the Liquidating Trust in the amount of $15,000.00 to be paid on the Effective Date (the "Trust Payment").  Thereafter, the Reorganized Debtor shall make quarterly distributions to the Liquidating Trust (with the first due December 31, 2020) in the amount of $10,000.00 through September 31, 2021, and beginning December 31, 2021 through September 31, 2025, quarterly distributions to the Liquidating Trust of $12,500.00.  Finally, the Reorganized Debtor agrees to contribute to the Liquidating Trust 50% of the aggregate cash balance in its accounts above $100,000 at the end of each quarter for five (5) consecutive years beginning December 31, 2020, before accounting for any direct or indirect equity distributions (other than for taxes), non-ordinary course bonuses to management or the Released Party or non-ordinary course salary to the Released Party (the "Excess Cash Payment").  Excess Cash Payments, if any, shall be made within 15 days of the end of each calendar quarter.  The Excess Cash Payment obligation shall survive any sale of the Reorganized Debtor.  The Reorganized Debtor shall provide the Liquidating Trust with quarterly income statements and balance sheets within thirty (30) days of the end of the quarter.  Class 10 is Impaired.  Upon reasonable request from the Liquidating Agent, Reorganized Debtor agrees to provide copies of information and documents necessary for the Liquidating Agent to exercise his/her fiduciary duties with respect to

the Estate and Liquidating Trust, including in connection with Claims administration, pursuing

Causes of Action (except those Causes of Action waived or released in the Plan and/or in this

Order) and enforcing Plan terms.

## ARTICLE VI – MEANS OF IMPLEMENTATION

*Article VI, shall be amended, and the terms specified therein shall be modified to read as follows*:

E.    Disbursing Agent.

The Reorganized Debtor will serve as the Disbursing Agent for all Distributions (except

Class 10) to be made under the Plan.   The Liquidating Trust is responsible for all disbursements

on account of Class 10 (other than the Trust Payment) and shall pay all U.S. Trustee Fees in respect

of such disbursements.

G.    Other Provisions.

1.    Procedures for Resolving Disputed Claims.

a.    Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except

as otherwise provided in the Plan, the Liquidating Trust shall have the exclusive right to make and

file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the

Plan. All objections commenced prior to the Confirmation Date shall be finished by the

Reorganized Debtor.

## ARTICLE VII – MISCELLANEOUS.

*Article VII, Section D, shall be amended, and the terms specified therein shall be modified to read as follows*:

11

D.    Exculpation from Liability.

The Debtor, and their officers, directors, members, managers, managing members and Professionals (acting in such capacity) and the Committee (acting in such capacity) and its Professionals shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case; *provided*, *however*, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  With respect to the Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case.   The rights granted hereby are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtor, the Reorganized Debtor, Committee, and their respective agents have or obtain pursuant to any provision of the Code or other applicable law, or any agreement. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions hereof shall not release or be deemed a release of any of the Causes of Action otherwise preserved by the Plan. The terms of this exculpation shall only apply to liability arising from actions taken on or prior to the Effective Date.

**ANY BALLOT VOTED IN FAVOR OF THE PLAN SHALL ACT AS CONSENT BY THE CREDITOR CASTING SUCH BALLOT TO THIS EXCULPATION FROM LIABILITY PROVISION.   MOREOVER, ANY CREDITOR WHO DOES NOT VOTE IN FAVOR OF THE PLAN AND WHO HOLDS A CLAIM THAT MAY BE AFFECTED BY THIS EXCULPATION FROM LIABILITY PROVISION MUST FILE A CIVIL ACTION IN THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION ASSERTING SUCH LIABILITY WITHIN NINETY (90) DAYS FOLLOWING THE EFFECTIVE DATE OR SUCH CLAIMS SHALL BE FOREVER BARRED; *PROVIDED THAT*, THE FOREGOING TIME LIMITATION SHALL NOT APPLY TO CLAIMS OF FRAUD, GROSS NEGLIGENCE, OR WILLFUL OR GROSS MISCONDUCT IN THE FORMULATION, PREPARATION, DISSEMINATION, OR CONFIRMATION OF THE PLAN. THE TIME TO BRING SUCH CLAIMS SHALL BE GOVERNED BY THE APPLICABLE STATUTE OF LIMITATION.**

Notwithstanding the foregoing, (i) the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan, and (ii) the Debtor's members, managers or executive officers shall not be relieved or released from any personal liability except as otherwise provided in the Plan.

At the Hearing, the Court considered the Modifications and determined that no further solicitation was required as the Modifications were either non-material or did not adversely affect the treatment of the claim of any creditor or holder of an equity interest and no creditor objected to consideration of the Modifications.   Upon consideration of the Plan, the Modifications, the Disclosure Statement, the Ballot Tabulation, the Confirmation Affidavit, and the testimony of Mr. Beck Tokahtev, and noting that Committee withdrew the Objection, the Court made findings of fact and conclusions of law as stated orally and recorded in open Court and determined that the requirements of 11 U.S.C. Section 1125 and 11 U.S.C. Section 1129 have been satisfied. Accordingly, it is hereby

**ORDERED** as follows:

1.        The Disclosure Statement is **APPROVED**.

2.        The Modifications are deemed incorporated into the Plan.

3.      The Plan is **CONFIRMED**.

4.      An *ore tenus* withdraw of the Objection was announced at the Hearing.

5.      The Joinder to the Objection is **OVERRULED**.

6.      The Debtor is authorized to execute all agreements and take all needed actions to consummate the Plan, including entry into the Liquidating Trust Agreement.

7.      <u>Vesting of Liquidating Trust Assets and Preservation of Litigation Rights</u>. Pursuant to the Plan, and pursuant to sections 1123(b)(3) and 1141(b) and (c) of the Bankruptcy Code, on the Effective Date, the assets of the Debtor's Estate that constitute the Trust Assets will be vested in and continue after the Effective Date as assets of the Liquidating Trust.   Except as otherwise provided in the Plan, the Liquidating Trust Agreement, or this Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, on the Effective Date, the Trust Assets shall vest in the Liquidating Trust, free and clear of all Claims, equity interests, liens, encumbrances, and interests.   Any Causes of Action shall be preserved and vest in the Liquidating Trust as provided in the Plan and shall be prosecuted, managed, controlled, and/or settled on behalf of the Liquidating Trust by the Liquidating Agent, as provided in the Plan and the Liquidating Trust Agreement.   The Liquidating Agent is authorized to take any action on behalf of the Debtor in the furtherance of the monetization of the Trust Assets.

8.      Subject to this Order, the Plan and the Liquidating Trust Agreement, the Liquidating Agent shall have the authority to file objections to Claims, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Liquidating Trust, any and all Claims (other than those claim objections commenced by the Debtor prior to confirmation).

9.      Pursuant to the Plan and in accordance with § 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of securities pursuant to the Plan, or the transfer of, or creation of any

14

lien on, any property of the Debtor pursuant to the Plan or pursuant to an Order of the Court, shall not be taxed under any law imposing a stamp tax, transfer tax, recordation tax, or similar tax.

10.    The Debtor shall pay all fees owing to the Office of the United States Trustee within thirty (30) days of entry of this Order for pre-confirmation periods and simultaneously file with the Court the appropriate financial reports indicating the cash disbursements for the relevant period.   The Debtor or, as applicable the Liquidating Trust, shall continue to pay quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing the Debtor's case or enters an order either converting or dismissing the case.

11.    The Debtor shall file with the Bankruptcy Court post-confirmation financial reports for each quarter (or portion thereof) that the Debtor's Chapter 11 case remains open, in the format prescribed by the United States Trustee, until the case is converted or dismissed.

12.    Debtor shall file a Certificate of Substantial Consummation and a Motion for Final Decree with thirty (30) days after the later of:

    a.    the Effective Date of the Plan;

    b.    payment of all fees and expenses of Estate professionals as allowed by the Court; or

    c.    disposition of all objections to claims, adversary proceedings and other contested matters.

13.    The Debtor shall file a report within ninety (90) days from the date of this Order of Confirmation.   If the cases remain open, the report shall include: (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the Debtor has substantially complied with the provisions of the confirmed Plan.

14.    The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to the Order of Confirmation, specifically including but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the Debtor or the Liquidating Trust, including any questions relating to any sums of money, services, or property due to the Debtor or the Liquidating Trust; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

15.    Any claim arising from the rejection of an executory contract or unexpired lease of the Debtor shall be filed with the Court no later than thirty (30) days after the Effective Date or entry of an order rejecting such agreement, whichever is later.   Absent the timely filing of such claims, such claims shall be forever barred and disallowed without further order of this Court.

16.    A status conference in this case is scheduled for **Tuesday, December 8, 2020 at 2:00 P.M. at the United States Bankruptcy Court, 400 W. Washington Street, 6th Floor, Courtroom 6C, Orlando, Florida 32801**. A Video Hearing Notice will be sent out by the Court, however, parties who wish to actively participate in the hearing must contact Judge *Vaughan's* Chambers via email at *aimee_johnson@flmb.uscourts.gov* by 5:00 p.m. on *December 4, 2020*. Parties who wish to listen only, not actively participate, or do not have video capability may appear telephonically via CourtCall (866-582-6878).

### 

Attorney R. Scott Shuker is directed to serve a copy of this order on all interested parties and file a proof of service within three (3) days of entry of the order.